(Prize.)

The Santa Maria. The *Spanish Consul*, Libellant.

A question of fact respecting the proprietary interest in prize goods, captured by an armed vessel fitted out in violation of the statutes of neutrality of the United States. Restitution to the original Spanish owners decreed.

Appeal from the Circuit Court of Maryland.

This was a libel filed in the District Court of Maryland, by the Consul of his Catholic Majesty for the port of Baltimore, in behalf of the Spanish owners of certain goods alleged to have been captured on the high seas, and taken out of the Spanish ship Santa Maria, by the privateer Patriota, illegally armed and equipped in the United States. The evidence in the cause established the fact that the capturing vessel was owned by citizens of this country, and that she was armed, equipped, and fitted out, in violation of the laws and treaties of the United States. But there was some contrariety in the testimony as to the identity of the property, which the claimant, Burke, insisted upon his title to hold as a *bona fide* purchaser under a condemnation and sale in some prize tribunal at Galveztown. There was also some evidence tending to show that Burke was a part-owner of the capturing vessel. The District Court dismissed the libel, and ordered the property to be restored to the claimant, but this decree was reversed by the Circuit Court, and the cause was brought by appeal to this Court

Mr. *Winder*, for the appellant, argued upon the facts, in order to show that there was a defect of evidence of proprietary interest in the Spanish subjects, for whom the claim was given, and that there was no proof that the goods in question were taken out of the Santa Maria, or any other Spanish ship. He therefore insisted that even if there was no proof on the part of the claimant and appellant of a lawful condemnation of the goods as prize, he had a right to stand upon his title as an innocent purchaser, until some better title was shown in others.

Mr. *D. Hoffman*, for the respondent, argued, (1.) that the evidence in the cause sufficiently established that the privateer Patriota, which plundered the Santa Maria, was owned and equipped in Baltimore. All captures made under the taint of an illegal outfit, or American ownership, have invariably been declared by this Court to be illegal, and the property taken has been restored to the original owners.[a]

2. All the cases cited were captures *jure belli*, under the sanction of commissions granted by South American provinces acknowledged by our government to be engaged in a civil war with Spain. In these cases, the Court would have left the captors, and the Courts of their country, in full possession of the *res capta*, had there been no American ownership, or equipment of the vessel effecting the seizure.[b] But this will not be the case where there is no *com-*

1822.

The Santa Maria.

*Feb. 20th.*

a The Alerta, 9 *Cranch*, 359. The Divina Pastora. 4 *Wheat Rep.* 52. Estrella, 4 *Wheat. Rep.* 298. Bello Corrunes, 6 *Wheat. Rep* 152. La Conception, 6 *Wheat Rep.* 235.

b Nuestra Senora, 4 *Wheat. Rep.* 495.

1822.

The
Santa Maria.

*mission* to legalize the capture. In the absence of a commission, every court administering the *jus gentium*, will regard the taking as *tortious* at least, and, according to circumstance, *piratical.* Every violent dispossession on the high seas is *prima facie* tortious ; and a taking as *prize* does not necessarily render it a capture *jure belli.*[a] It lies upon the claimant in this case to show the commission under which the taking is justified : if this be not shown, the Court, in the exercise of its general powers, will restore the property, unless the claimant can establish his right on some other ground. In this case, no commission is produced ; but,

Burke claims to hold this property rightfully as a *bona fide* purchaser, wholly ignorant of the circumstances stated in the libel. If there were any truth in this defence, in point of fact, it might be well to inquire how far even a *bona fide* purchaser, in this case, could protect himself by such a purchase. It might be urged that the doctrine of *market overt* is unknown to the *jus gentium* ; that it is of peculiar and local origin, known only in England, and never recognized in the Courts in this country ; that the doctrine *a piratis et latronibus capta dominium non mutant,* is the received opinion of the most enlightened civilians and publicists ; that as no right to the spoil vests in them, no right can be *derived* from them ; that even if the doctrine of *market overt* were otherwise applicable, it could not obtain, inasmuch as a condemnation is essential, and this could not be of

a The Two Friends, 1 *Rob.* 283. Hallet v. Novion, 14 *Johns. Rep.* 90.

*bona piratorum ;*[a] that if the purchase was *bona fide,* the claimant only succeeded to the right of the vendors; a sale, *ex vi termini,* importing nothing more than a succession of the vendee, in consideration of money, to the rights of the vendor; and, finally, that the title of the claimant cannot be broader or more extensive than that of the pirates themselves, or those to whom they may have sold the property. But all this inquiry is unnecessary, if the proofs in this cause establish that the claimant was the active and principal owner of the Patriota, which seized and plundered the Santa Maria. On this point the circumstantial evidence comes strongly in support of the positive testimony. But there is, in the answer itself, a singular inconsistency, which throws a dark shade of suspicion over the character of this claim. The claimant first denies *all* knowledge of the capture of the Santa Maria, and of every fact stated by the Libellant in relation to the Patriota, but subsequently relies on a purchase of this property, by his agent Novion, in *regular course of trade, after it had been duly condemned !* It was no doubt his intention, at the time of filing his claim, to produce an authenticated record of condemnation, which was subsequently abandoned, no doubt from a knowledge that *Aury's* commission, (the only one he could venture to produce,) was a nullity, and that the tribunals of prize at *Galveztown,* were wholly incompetent to adjudicate,[b] even

*a* 2 *Bro. Civ. and Adm. Law,* 55. 461, 462. 2 *Woodes.* 429. 3 *Binn. Rep.* 228. 1 *Johns. Cas.* 471. 1 *Tyl. Rep.* 338.

*b* The Nueva Anna, 6 *Wheat. Rep.* 193.

1822.

The
Santa Maria.

if a condemnation of a *competent* court could avail in such case.

After this conclusive testimony, establishing the falsity of the claim and answer filed by Burke, need it be asked whether he is a *worthy* claimant? He is a citizen of the United States, calling on this Court to confirm to him the possession of goods, taken by a vessel fitted out by him in contravention of our laws, neutrality, and solemn treaties: and this, too, not even under the colour of a commission from any power, acknowledged or unacknowledged.

Mr. *Harper* also argued, upon the same side, on the facts respecting the proprietary interest, and upon the question of law arising from the supposed condemnation at Galveztown. The substance of his argument upon the latter point will be found in the case of the Nereyda, where the same question arose more distinctly, but which was ordered to farther proof, and will be reported in the next volume.

March 14th.

Mr. Justice LIVINGSTON delivered the opinion of the Court, and after stating the case, proceeded as follows;

In a case of so palpable a fitting out and arming in an American port, and proceeding thence directly on a cruize, (whether with or without a commission, is in this case immaterial,) the counsel for the claimant and libellant was right in not attempting to justify the capture. He has therefore confined his endeavours to show the insufficiency of the evidence to establish

any title in the libellant, or in those whom he represents, to the merchandize in question.

The allegation of the libel is, that the property was part of the cargo of the Spanish ship Santa Maria, which was captured by the Patriota in the year 1817. The appellant says, there is no adequate proof of this fact. Without laying any stress on the register of this ship, which has been sent from the Havana, and to which the appellant has objected, there are four witnesses, and they are the only witnesses in the cause, whose relation is so uniform and particular as to leave no room to entertain doubt on any part of this transaction.

Three of them were on board of the Patriota, at the time of her sailing on her illegal cruise. They establish, not only the unlawful armament of this vessel in the port of Baltimore, but the capture of the Santa Maria, and that the sugars libelled are the identical sugars which were taken out of her, and put on board of the schooner Harriet, in which they were brought to Baltimore. The other witness, Causter, although not present at the capture, testifies, in the most positive terms, and of his own knowledge, that the sugars libelled were part of the cargo of the Santa Maria. He speaks so much in detail on the subject, and his means of information were so ample, that it is impossible he should be mistaken. Under these circumstances, and when not a single witness has been examined to throw any doubt on the subject, the Court perceives no reason for disturbing the sentence of the Circuit Court, which is affirmed with costs.