22 U.S. 658
 6 L.Ed. 184
 9 Wheat. 658
 The FANNY.
The CONSUL-GENERAL OF PORTUGAL, Libellant.
 March 15, 1824
 
 APPEAL from the Circuit Court of Maryland.
 This was the case of a libel filed by the Consul-General of Portugal, on behalf of certain Portuguese subjects, owners of a number of hides which had been brought from St. Thomas to Baltimore in the brig Fanny. The facts proved in the cause, which the Court considered to be material, are the following:
 Some time in the year 1817, Robert M. Goodwin, Clement Cathill, James Halsey, and John R. Mifflin, all of them citizens of the United States, and denominated 'The American concern,' fitted out, at Buenos Ayres, a brig, called La Republicana, as a privateer to cruise against the subjects of Spain and Portugal, under a commission obtained for her from Jose Artigas. Thus prepared, she sailed under the command of Obadiah Chase, also a citizen of the United States, and, in February, 1818, she captured the Portuguese brig Aurora, which, with her cargo, were sent to St. Barts, and there sold as American property for about 20,000 dollars. With this money, thus raised, Goodwin proceeded to Baltimore, and there invested it in the purchase of a new brig, called the Athenea, which had been lately built at that port. Having changed her name to that of the New Republicana, both privateers shipped their crews at Baltimore, together with their munitions of war, except the cannon and carriages for the latter vessel, which, with a view of deceiving the custom-house officers, were put on board of a small schooner, and were transferred to this privateer, a few miles below the fort. The commission, together with other papers belonging to the Republicana, were delivered to the New Republicana, and both the privateers proceeded to sea; the latter under the command of the above mentioned Clement Cathill, one of the owners. She soon after fell in with the Portuguese ship Don Pedro de Alcantara, laden with a valuable cargo of hides, sugar, &c. which she captured on the 22d of September, 1818, and ordered in to the Five Islands, there to await the orders of Goodwin. At this place, Goodwin transhipped the principal part of the cargo into several small vessels, which proceeded to the island of St. Thomas, consigned to Souffron & Co., merchants of that place. The residue of the cargo, except a small part, which was afterwards taken, together with the Don Pedro, by Commodore Jolly, commanding a squadron belonging to the republic of Colombia was also carried by Goodwin to St. Thomas, in the old privateer, at which place it is probable the whole or a great part of the captured property was sold. Nathaniel Levy, the American Consul at that island, purchased 4004 of the hides, which, together with 555 logs of lignum vitae, he shipped in the brig Fanny to Baltimore, where she arrived in January, 1819, consigned to Lyde Goodwin. On the 21st of this month, the hides and lignum vitae were libelled as Portuguese property, illegally taken on the high seas, and on the 27th of the same month, the lignum vitae was released from the operation of the libel.
 To this libel a claim was filed by Lyde Goodwin, as agent of Levy, in which it is asserted that the hides had been purchased by Levy, in the regular course of trade, from Souffron & Co., and all knowledge of the matters alleged in the libel is denied. On the 15th of March the hides were delivered upon stipulation, having been appraised at the sum of 12000 dollars.
 In the progress of the cause in the District Court, the owners of the brig Fanny presented to the Judge a petition, setting forth, that on the 6th of October, 1818, Nathan Levy entered into a charter-party of affreightment with the petitioners for the brig Fanny, on certain terms stated in the petition, for a voyage from Baltimore to St. Lucie, and if required, to three other ports in the West Indies, and thence back to Baltimore. That, under this charter-party, the said brig took in a cargo at Baltimore, and sailed to St. Lucie, and to three other ports, and finally delivered the cargo to the said Levy, who afterwards shipped on board the said brig, at St. Thomas, 4000 hides and 555 sticks of lignum vitae, to be carried to Baltimore, where she arrived on the 17th of January, 1819. That upon her arrival, and when the master was about to deliver the cargo to the consignee of Levy, this libel and claim were filed, and the cargo was taken from the possession of the master by the Marshal, under the process of the said Court. That there was then due to the petitioners, on the said charter-party, the sum of 2094 dollars 50 cents, as admitted by the said Levy, which they pray may be paid out of the proceeds of the hides and lignum vitae. This petition was accompanied by an account, dated the 28th of December, 1818, signed by Nathan Levy, acknowledging a balance of 2094 dollars 50 cents to be due the said brig Fanny on the charter-party. Below this account is the following entry, not signed by any person: 'The freight on the homeward cargo, consisting of 4004 hides and 555 sticks of lignum vitae, $1047 25.' The Court made an order that the agent of the claimant should pay the freight on the above goods to the amount of 1047 dollars 25 cents.
 The District Court decreed the claimants to pay to the libellant the appraised value of the hides, as mentioned in their stipulation, together with interest and costs, after deducting the amount of freight theretofore ordered to be paid. This decree being wholly affirmed by the Circuit Court, upon an appeal, both parties appealed from that decree to this Court.
 Mr. D. Hoffman, for the libellant, argued, 1. That this was a piratical taking, there being no sufficient evidence of a valid commission.a But if the power granting the commission were valid, still the seizure is piratical, as the commission was not only amortised, but transferred to a new vessel and a new commander, by whom it was abused in the grossest acts of violence, evincive of an animus depredandi, and which constituted the captors trespassers ab initio.b Had the authority which granted the commission been competent, and the proceedings under it regular, as the laws of this country have been violated by the captors, who are American citizens, this Court will restore the res capta.c The appellant claims the protection of this Court, on the ground of his being a bonae fidei purchaser, under a valid condemnation. If this could avail him in law, he has failed in his proof of bona fides. Every circumstance of evidence and probability is against him. Admitting, however, that there was a purchase in good faith, and under entire ignorance of the circumstances, the title of this claimant cannot be valid against that of the original owners, since there was no condemnation in point of fact; and if there had been, still, as the taking was either without a valid commission, or in virtue of an amortised or abused one, the condemnation would be inoperative.d
 2. Levy, if free from all blame, cannot sustain his claim, under the doctrine of market overt. There can be no such protection for property taken jure belli, at least until after condemnation; and the doctrine of market overt is itself unknown to the jus gentium.e
 3. A condemnation is produced, but it is wholly unnecessary to dwell on its operation, since a condemnation, in all respects valid as between belligerents, cannot deprive this Court of its power to restore, when the original taking was in violation of our laws. And, secondly, the condemnation now exhibited, cannot possibly apply to the property in question, as it will be found, on reference to the dates, that this decree of condemnation was some time after Levy's alleged purchase, and, indeed, only a few days prior to the filing of the libel in this cause.f But,
 4. The main point of inquiry regards the claim to freight. We contend, that the appellant is responsible to us for the entire value of the hides, as the same is ascertained by the stipulation, together with interest; and that the freight bill, though properly paid by the appellant to the innocent ship-owner, cannot now be deducted by this illegal captor, from the amount stipulated to be paid by him. Waiving all question which might be made, as to the power of this Court to decree freight in the case, on the ground of incidental jurisdiction, we insist that the present is not a claim by the ship-owner for his freight, but by the appellant, to have the same allowed to him out of this fund, as having been properly paid by him. If this Court reject the claim of the appellant to the property, on the ground of its having been illegally captured, and that this infirmity adheres to the property even in the hands of a bonae fidei purchaser, we are at a loss to conceive how this purchaser can rightfully impose any charge or incumbrance whatever upon it. But when we advert to the real character of the appellant, and find him an unworthy claimant, in truth as much so as the captor himself had been, we cannot suppose that he can be entitled to any favour at the hands of this Court. He brought this prize property into an American port, without the knowledge or privity of its owner, and surely ought not to claim either compensation or indemnity, for doing that which, as to the other party, is in invitum, and has proved, in fact, extremely prejudicial to him. If this be a claim on the fund, it is only so as regards the innocent owner. No lien can be created by one who has no property, general or special, in the thing. If a malae fidei possessor cannot so mortgage or pledge the property, as that such mortgage or pledge shall be valid against the true proprietor, he is not competent to create any lien, nor to impose any charge or incumbrance whatever. But without pressing this point, we do not think that the appellant is entitled to be subrogated to the rights of the innocent ship-owner, if such right of lien even vested in him. If this claim to freight were one in rem, as well as in personam, and the illegal captors, or those claiming under them, have satisfied the personal obligation, it does not follow that they can now enforce that lien against the fund which it might, argumenti gratia, be admitted that the ship-owner possessed. This is very unlike the case of a neutral's claim for freight on belligerent property captured from him by another belligerent. The neutral had a right so to employ his vessel, subject only to the belligerent's right to make the seizure; he, therefore, in such case, takes it cum onere, and must pay the neutral his freight. The object here, however, is to transfer the obligation of paying the freight from the illegal captor to the despoiled individual. If the controversy were now wholly between the Portuguese owners of the property and the innocent American ship-owner, the claim might deserve some consideration. In this case, the ship-owner is the agent of the captors, or those claiming under them, not of the Portuguese owner, and as such, must look to his employers, and not to the goods; and if, in fact, the illegal captor has paid the freight, he cannot thereby entitle himself to be refunded out of the fruits of his piratical taking. The claim to freight is always conventional; a claim even to pro rata freight, arises from some convention, and not from the simple fact of transportation. In this case, no consent of the owners to the shipment to Baltimore can be implied. Our claim to the property is disputed on all points; and if none of these is found tenable, but the taking is ascertained to be a gross act of piracy, it would be a strange anomaly, that an honest and lawful belligerent must pay freight to a neutral ship-owner, and yet that a piratical captor shall be exempt from charges voluntarily imposed by him on the property, and that these shall be cast on those whom he has endeavoured to despoil.
 5. The Court below has, also, manifestly erred in allowing the entire freight bill, as this includes a charge on some lignum vitae, which formed no part of that which is owned or demanded by the libellant. We, therefore, ask at the hands of this Court, the whole value of the property, as it is ascertained by the stipulation, together with interest from its date, so that the claim to freight may be wholly rejected. The ship-owner is, indeed, the petitioner for freight in this case; but he has been since paid, and the claim, in truth, is now at the instance of the captor, who desires to be subrogated to the rights of the ship-owner, and to enforce his lien, if he had one. We have endeavoured to show, that no such right existed, and that if it ever did, the captor is not entitled to receive the benefit of such lien.
 Mr. Winder, contra, argued principally upon the facts, to show that the alleged purchase was bona fide.
 March 15th.
 Mr. Justice WASHINGTON, delivered the opinion of the Court; and after stating the case, proceeded as follows:
 
 
 1
 The above case presents two questions for the consideration of this Court. 1. Whether the Court below was correct, in restoring to the Portuguese owner that part of the cargo of the Fanny which was restored? And, 2. Whether the freight which was ordered by the Court to be paid to the owners of that vessel, ought, in whole or in part, to have been deducted from the appraised value of the hides?
 
 
 2
 Upon the first question, it is to be observed, that the facts above stated are incontestibly proved by the evidence in the cause. That the capturing vessel, the New Republicana, was built at Baltimore, purchased at that place by citizens of the United States, and there manned and fitted for sea, armed and equipped as a vessel of war, within the waters and jurisdiction of the United States; and with such equipments, left the United States, to cruise against the vessels and property of Spanish and Portuguese subjects on the high seas; and upon such cruise, captured the Don Pedro de Alcantara, with a valuable cargo, belonging to Portuguese subjects, were facts too clearly proved to be questioned; nor were they questioned by the counsel for the claimants. It is established, by evidence equally clear and uncontradicted, that the 4004 hides which were brought in the Fanny from St. Thomas to Baltimore, upon which the sentence of the Court below operated, formed a part of the cargo of the Don Pedro de Alcantara at the time of her capture, and that they were the property of Portuguese subjects.
 
 
 3
 This, then, is the case of property belonging to the subjects of a friendly power, captured on the high seas by a privateer, owned and commanded by citizens of the United States, fitted and equipped as a vessel of war, within the waters and jurisdiction of the United States; and, according to the uniform decisions of this Court in similar cases, as well as in others, where similar equipments have been made within the waters of the United States by foreigners, the property so illegally captured and brought within our jurisdiction, must be restored to the original owners, unless it could be maintained that the sale of it to the claimant devested those owners of their right to the same. But it is to be remarked, in the first place, that the asserted purchase of these hides by Levy is unsupported by any evidence whatever. He alleges in his claim, that he purchased the hides for a valuable consideration from Souffron & Co. in the regular course of trade; but this allegation is not upheld by any written document, or by the testimony of a single witness. The cause was depending more than two years in the Courts below, during all which time it was fully in the power of the claimant, a resident of the island of St. Thomas, to have proved the reality of this purchase, by the testimony of the vendors, or otherwise, if the fact had been as it was alleged.
 
 
 4
 But, admitting the truth of the asserted sale to Levy, he was, nevertheless, a purchaser from the agent of a tortious possessor of property to which he had no title whatever, and who, consequently, could transfer none to his vendee. The proceedings in the Vice-Admiralty Court of Margarita, by Commodore Jolly, against the Don Pedro de Alcantara and the small part of her cargo which had not been transhipped at the Five Islands, so far from amounting to a sentence of condemnation, even of the property libelled as prize of war, proceeded upon the ground of a recapture from a non-commissioned privateer, for which the recaptor was rewarded by a liberal salvage, and the residue of the sales of the property was decreed to the Portuguese owners, in case they should claim the same within the period of a year and a day. This Court is, therefore, of opinion that the decree of the Circuit Court, so far as it restores to the libellant the 4004 hides, or their proceeds, is right, and ought to be affirmed.
 
 
 5
 The second question respects the freight, which the decree of the Court below ordered to be deducted from the appraised value of the hides; and it is attended by no difficulty but such as arises from the confined and imperfect statement of the facts appearing in this record. That the freight of the lignum vitae, which did not belong to the libellants, and against which the proceedings were abandoned, ought not to have been paid out of the proceeds of the hides, is a matter which we think is quite too clear to be disputed; and we think it probable that the mistake was occasioned by an oversight in the Judge of the District Court, from his not knowing, or recollecting, when the petition for freight was before him, that the lignum vitae had been released from the operation of the libel. The decree, then, must, of course, be reversed, for this reason, and the cause remanded for further proceedings, in order to ascertain and separate the freight upon that article, from that due upon the hides.
 
 
 6
 But there is, apparently, error in the decree in respect to the whole of the freight, which, it is possible, may be explained and removed by a further examination of this subject in the Court below. The petition for freight claims the precise sum of 2094 dollars and 50 cents, as the balance acknowledged to be due by the claimant, and the account, signed by him on the 28th of December, 1818, which accompanied the petition, amounted to an acknowledgment that that sum was then due. The items of that account are, freight on 1095 barrels of flour, out and home, per charter-party, 5 cases of furniture, 36 bags of corn, and 7 days demurrage. Below that account is stated the freight due upon the hides and lignum vitae, amounting to 1047 dollars and 25 cents. It would seem, therefore, as if the freight upon the hides and lignum vitae, which arrived in Baltimore some time in January, 1819, was not included in the account signed by the claimant, and if so, it was not claimed to be due, nor required by the petition to be paid. Yet the order of the Court was, that it should be paid, and it was accordingly deducted from the appraised value of the hides. If the case should turn out to be such as is above supposed, it would seem to warrant the conclusion, that the freight upon the hides had been paid by Levy, in which case it ought not to be deducted from their appraised value, unless the reality of the asserted purchase of the hides by Levy should be made to appear to the satisfaction of the Court below, without which, we are of opinion that he is to be considered as a malae fidei possessor, and, consequently, as not entitled to be reimbursed the freight so paid, out of the property of the Portuguese owners. If, on the other hand, it should appear that the claimant was a bonae fidei purchaser of the hides, without notice, or that the freight upon them had not been paid by him to the owners of the Fanny, then it was properly deducted.
 
 
 7
 DECREE. This cause came on to be heard, &c. On consideration whereof, it is DECREED and ORDERED, that so much of the decree of the said Circuit Court as orders that the claimant pay to the libellant the appraised value of the hides, in the proceedings mentioned, together with interest and costs of suit, be, and the same is hereby affirmed, with costs, subject, however, to such deduction for freight as the said Circuit Court may hereafter direct, to be paid out of said appraised value, as may be hereafter decreed under the further proceedings in this cause: And as to so much of said decree of said Circuit Court, as directs the amount of freight to be deducted, agreeably to the previous order of said Circuit Court, the same is hereby reversed and annulled. And it is further ORDERED, that said cause be remanded to the said Circuit Court, for further proceedings to be had therein according to law, for the purpose of ascertaining, upon further proof, whether the claimant had paid the freight of the hides to the owner of the Fanny; and, if so, whether the claimant was a bonae fidei purchaser of said hides, without notice. And if the said Court should be satisfied from such further proof, that the said claimant, Nathan Levy, has paid the owner of the Fanny for said freight, or that he was not such bonae fidei purchaser, without notice, then with instructions not to allow a deduction of freight from the said appraised value. But if the said claimant was such bonae fidei purchaser, without notice, or if said freight had not been paid by said claimant to the owners of the Fanny, then the freight for the hides, excluding the freight on the lignum vitae, to be deducted from the appraised value of said hides.
 
 
 
 a
 7 Wheat. Rep. 476. 8 Wheat. Rep. 111.
 
 
 b
 3 Wood. Lec. 14 Johns. Rep. 273.
 
 
 c
 6 Wheat. Rep. 152. 7 Wheat. Rep. 496. 8 Wheat. Rep. 108.
 
 
 d
 2 Bro. Civ. Law, 55. 252, 253. 268. 461. 464. 1 Johns. Rep. 471. Bee's Rep. 308. 5 Wheat. Rep. 345, 346.
 
 
 e
 7 Wheat. Rep. 490.
 
 
 f
 Wheat. Rep. 108. 167. 174.