**Jack AHNG, Robert Johnson, Alberto Barbosa, et al., Plaintiffs–Appellants,**

v.

**ALLSTEEL, INCORPORATED, Defendant–Appellee.**

Nos. 95–2721, 95–3734.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 9, 1996.

Decided Sept. 25, 1996.

**1034**

Ralph E. Wilhoite, Jr. (argued), Frederick M. Lerner, Lerner & Wilhoite, Chicago, IL, for Plaintiffs–Appellants.

Arthur B. Smith, Jr., Michael T. Roumell, Peter A. Steinmeyer (argued), Murphy, Smith & Polk, Chicago, IL, for Defendant–Appellee.

Before WOOD, Jr., ESCHBACH, and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

■ Section 204(g) of the Employment Retirement Income Security Act, 29 U.S.C. § 1054(g), prohibits an employer from enacting amendments to its pension plan that result in the reduction of accrued benefits. The question to which we return today is whether the anti-cutback rule of the Retirement Equity Act of 1984, Pub.L. No. 98–397, 98 Stat. 1426 (1984), which amended § 204(g), should be interpreted to prohibit pension plan amendments or terminations that reduce or eliminate an employee's ability to participate in early retirement benefits. In 1993, this Court concluded that early retirement benefits were not "accrued benefits" within the meaning of ERISA and thus were not protected by § 204(g). *Meredith v. Allsteel, Inc.*, 11 F.3d 1354 (7th Cir.1993). Seven other courts of appeals have now come to the opposite conclusion. See *Richardson v. Pension Plan of Bethlehem Steel*, 67 F.3d 1462, 1467–68 (9th Cir.1995); *Costantino v. TRW, Inc.*, 13 F.3d 969, 977 (6th Cir.1994); *Hunger v. AB*, 12 F.3d 118, 120 (8th Cir. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2676, 129 L.Ed.2d 811 (1994); *Gillis v. Hoechst Celanese Corp.*, 4 F.3d 1137, 1143–44 (3d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1369, 128 L.Ed.2d 46 (1994); *Harms v. Cavenham Forest Indust., Inc.*, 984 F.2d 686, 692 (5th Cir.), *cert. denied,* 510 U.S. 944, 114 S.Ct. 382, 126 L.Ed.2d 331 (1993); *Aldridge v. Lily–Tulip, Inc.*, 953 F.2d 587, 590 (11th Cir.1992); and *Amato v. Western Union Int'l, Inc.*, 773 F.2d 1402, 1410 (2d Cir.1985), *cert. denied,* 474 U.S. 1113, 106 S.Ct. 1167, 89 L.Ed.2d 288 (1986). Having carefully considered both the arguments of the parties before us and the opinions of those courts, we have decided to overrule this part of our prior decision in *Meredith.*[1] Because we find no alternative ground on which to uphold the district court's judgment, we reverse and remand for further proceedings.

---

1. Because this decision changes the law of this Circuit, the opinion was circulated before release to all judges in active service, pursuant to Circuit Rule 40(e). No judge wished to hear the case *en banc.*

Allsteel is an Illinois company that manufactures steel office furniture. In 1974, it adopted a pension plan for its employees, the All–Steel Pension Plan No. 1. Section 1.3 of the plan provides that the administrator (Allsteel) shall administer the plan in a manner consistent with the terms of the plan and any applicable pension agreement arrived at through collective bargaining. Section 11.1 of the plan provides that, subject to any applicable pension agreement arrived at through collective bargaining, the plan may be amended at any time by agreement of the parties to the plan. In accordance with these provisions, the parties entered into pension agreements in their collective bargaining agreements over the years. All of the plaintiffs except James Blencoe and Richard Reynolds retired from Allsteel in or after April 1994, with either 10 years of service and 55 years of age or over 30 years of service. Blencoe and Reynolds are current employees at Allsteel who have over 30 years of service. All plaintiffs are participants in the All–Steel Pension Plan No. 1.

In 1988 and 1991, Allsteel entered into collective bargaining agreements that provided supplemental early retirement benefits for certain employees. The 1988 agreement provided:

The following supplemental benefits shall be payable to certain retired members on the first day of each month during the period of April 1, 1988, to March 31, 1991 ("the payment period").... 

(c) Any Member who retires on or after April 1, 1988 shall be entitled to a supplemental benefit commencing on July 1, 1988 *or at later retirement* and for each month thereafter while he is living during the payment period in the amount of $900 until such Member attains age 65.

(Emphasis added.) In 1991, the language of the collective bargaining agreement changed, to read instead:

2. Employees who retired on or after 4/3/88 *and prior to 3/31/91* shall be entitled to continue to receive a $900 pension supplement until they reach Age 65.

(Emphasis added.) Allsteel and the plaintiffs agree that the 1989 and the 1991 collective bargaining agreements effected proper plan amendments under the terms of the All–Steel Pension Plan No. 1. See ERISA § 402(b)(3), *Curtiss–Wright Corp. v. Schoonejongen,* —— U.S. ——, ——, 115 S.Ct. 1223, 1231, 131 L.Ed.2d 94 (1995). This case therefore does not present the more difficult question under what circumstances a collective bargaining agreement itself might be a plan for ERISA purposes.

The litigation in *Meredith* was brought by employees who allegedly had not retired in time to meet the March 31, 1991, deadline in the 1991 agreement. Most of this Court's opinion addressed the question whether the time an employee "retired" was the same as the "retirement date" for purposes of benefits under the plan. This was important because the employees alleged that most of them had actually left their jobs during the month of March 1991. Allsteel had asserted that regardless of the literal last day of work, the "retirement date" for March retirees was April 1, 1991, and therefore they missed the window period for supplemental early retirement benefits that was part of the 1991 plan (and, according to Allsteel, part of the 1988 plan as well). Ruling for the employees, this Court found that the district court had erred in granting summary judgment for Allsteel on the theory that the word "retire" and the phrase "retirement date" necessarily had the same meaning under the contract. Thus, the *Meredith* plaintiffs won a remand to the district court. (It is important to note that none of the employees before us in the present case retired before March 31, 1991; they therefore stand in a different position, at least at first blush, from the *Meredith* plaintiffs.)

On the point before us today (in a section labeled "other arguments"), the *Meredith* Court ruled as follows:

The plain language of ERISA leads to the inescapable conclusion that early retirement benefits are not accrued benefits. ERISA Section 204(g), 29 U.S.C. § 1054(g), prohibits amendments to a plan which have the effect of reducing "accrued benefits." The definition section of ERISA defines an accrued benefit as one "commencing at normal retirement age...." ERISA Section 3(23), 29 U.S.C.

§ 1002(23). The statute defines normal retirement age as "the time a plan participant attains normal retirement age under the plan" or the later of "the time a plan participant attains age sixty-five, or ... the tenth anniversary of the time a plan participant commenced participation in the plan." *Id.* at § 1002(24). Taken together, these provisions indicate that early retirement benefits are not accrued benefits under ERISA. Accord, *Bencivenga v. Western Pennsylvania Teamsters and Employers Pension Fund*, 763 F.2d 574, 577–78 (3d Cir.1985) ...; *Sutton v. Weirton Steel Div. of National Steel Corp.*, 724 F.2d 406, 410 (4th Cir. 1983) .... (explanatory parentheticals omitted).

*Meredith*, 11 F.3d at 1359–60. The *Meredith* opinion did not address the effect of the Retirement Equality Act amendment to § 204(g). Furthermore, neither of the two cases cited arose under the post–1984 language: *Sutton* was decided a year before the statute was passed, and *Bencivenga* involved plan years prior to January 1, 1985, the effective date of the new Act. Correctly believing itself bound by *Meredith*, the district court granted summary judgment for Allsteel and alerted this Court to its belief that the plaintiffs' arguments were made in good faith. Now that we have had the opportunity to reconsider the 1984 statute and its applicability to early retirement benefits, we conclude that it is appropriate under the circumstances to revisit our earlier decision to ensure that the law in this Circuit comports with the statutory scheme.

The 1984 amendments to § 204(g) expressly addressed the question of early retirement benefits. Section 204(g) reads:

(g) Decrease of accrued benefits through amendment of a plan

(1) The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan, other than an amendment in section 1082(c)(8) or 1441 of this title.

(2) For purposes of paragraph (1), a plan amendment which has the effect of—

(A) eliminating or reducing an early retirement benefit or a retirement-type subsidy (as defined by regulation), or

(B) eliminating an optional form of benefit,

with respect to benefits attributable to service before the amendment shall be treated as reducing an accrued benefit.

As two leading ERISA scholars summarized it, the effect of the Retirement Equality Act was to make it clear that "a plan may not be amended to eliminate or reduce an early retirement benefit or a 'retirement-type' subsidy 'with respect to benefits attributable to service before the amendment.'" John H. Langbein and Bruce A. Wolk, Pension and Employee Benefit Law 142–43 (2d ed.1995). They also explained the operation of the anti-cutback rule:

The statute provides that in the case of a retirement-type subsidy, the anti-cutback rule does not apply unless the participant "satisfies (either before or after the amendment) the preamendment conditions for the subsidy." Thus, if a plan is amended to eliminate a subsidized early retirement benefit for employees who have completed 30 years of service, the plan would not be required to provide the benefit to an employee who never completes 30 years of service.

*Id.* at 143. The courts of appeals that have ruled on an employee's right to "grow into" early retirement benefits have followed this reasoning and have uniformly held that as long as an employee satisfies, or will be able to satisfy, the eligibility requirements of the early retirement benefit in effect prior to the amendment, § 204(g) protects the benefit. See, *e.g.*, *Hunger*, 12 F.3d at 120; *Gillis*, 4 F.3d at 1143–46; *Harms*, 984 F.2d at 692.

In the face of this overwhelming authority, it was not surprising that Allsteel's counsel conceded at oral argument that *Meredith*'s analysis of § 204(g) was no longer sustainable. We agree. We find the statutory language plain and the position of our sister circuits persuasive, and we therefore hold that employees like the Ahng plaintiffs here who complain about a cut-back of early retirement benefits have stated a claim under

§ 204(g), as long as each employee satisfies (either before or after the plan amendment) the relevant eligibility requirements in place at the time of the amendment.

In order to save its judgment, Allsteel offers a number of alternative arguments. First, Allsteel asserts that the doctrine of *stare decisis* should cause us to adhere to *Meredith*. However, important as *stare decisis* is, it is equally important for us to respect the statutes that Congress has passed and to correct any problems we see in our prior interpretations of those statutes. If we genuinely believe that the other circuits are right, it would be irresponsible to wait for the Supreme Court to grant *certiorari* in a case to resolve an apparent circuit conflict, when it lies in our power to eliminate that conflict.

■ Second, Allsteel asserts that the *Meredith* plaintiffs were the "virtual representatives" of the plaintiffs before us in this case, and therefore that the Ahng plaintiffs should be bound under principles of *res judicata* to the earlier result. Again, we disagree. The doctrine of "virtual representation" recognizes, in effect, a common-law kind of class action. It applies only when there is a practical identity of interests between the former litigant and the present one. See, *e.g., People Who Care v. Rockford Bd. of Educ.*, 68 F.3d 172, 177 (7th Cir.1995); *Matter of L & S Industries, Inc.*, 989 F.2d 929, 933 (7th Cir.1993). Here, as we have pointed out, that identity of interest is lacking. The *Meredith* plaintiffs had no need to press the point that the 1991 change in the plan harmed people who retired *after* March 31, 1991, for the simple reason that none of them fell within that group. Because they "won" on a different ground before this Court, they had no need to seek independent review from the Supreme Court on the § 204(g) ruling. The Supreme Court, after all, reviews judgments; it does not sit to rewrite a lower court opinion at the request of the winning party who wishes that it had won even more. At oral argument, Allsteel conceded that the *Meredith* plaintiffs could not have represented a class of individuals that included members who retired after March 31, 1991, under Rule 23. For the same reasons that they would

fail to qualify as adequate representatives for Rule 23, they also fail the test for virtual representatives. The Ahng plaintiffs are entitled to their own day in court. See generally *Richards v. Jefferson County*, —— U.S. ——, 116 S.Ct. 1761, 135 L.Ed.2d 76 (1996).

Finally, Allsteel argues that the record is developed enough that this Court can affirm the district court's summary judgment on the alternative ground that the 1991 amendment did not make any material change to the early retirement benefit. Allsteel claims that the window period that plainly appears on the face of the 1991 amendment, giving the $900 supplemental payment to persons retiring between April 1, 1988, and March 31, 1991, was also part of the 1988 plan, albeit in a different section that defined the "payment period" as beginning on April 1, 1988, and ending on March 31, 1991. This point, however, is hotly contested by the plaintiffs. Because the district court disposed of the case solely on the basis of *Meredith*, we believe that the sounder course is to remand to allow that court to consider this issue first. Further factual development may be necessary, and the parties will need to focus their arguments on this point now that it is clear that the statute covers early retirement benefits.

■ After the district court granted summary judgment to Allsteel, it awarded attorneys' fees to Allsteel pursuant to its power under 29 U.S.C. § 1132(g)(1). Because we are reversing the grant of summary judgment, we also vacate the award of fees. In doing so, however, we wish to note that the district court apparently was under the misapprehension that an order awarding fees for the winning party is virtually required whenever the loser is challenging an existing case in the circuit. If that were the standard, then the cost of bringing forward a good faith argument for a change in the law would be the risk of an adverse fee award. The law in this Circuit, however, is otherwise. We have frequently held that attorney's fees should not be awarded if "the losing party's position is substantially justified and taken in good faith." *Anderson v. Flexel, Inc.*, 47 F.3d 243, 251 (7th Cir.1995). See also *Harris Trust and Sav. v. Provident Life and Acc. Ins.*, 57 F.3d 608, 616–17 (7th Cir.1995);

*Brewer v. Protexall, Inc.*, 50 F.3d 453, 458–59 (7th Cir.1995). The district court here indicated in its ruling on the fee petition that it believed the plaintiffs had good faith arguments about a new dispute. The judge went so far as to tell the plaintiffs' lawyer that "your earnestness and good faith and, perhaps, correctness, but not in the absolute sense—but the chance of you prevailing is good enough, so I think you shouldn't even have to pay until you are done at the Seventh Circuit." Circuit Rule 40(e), which we have invoked in this case, rests on the assumption that panels of this Court will occasionally conclude that an earlier decision should be disapproved. There is no rule requiring an automatic fee award to the party supporting that earlier decision should the challenger fail.

The judgment in No. 95–2721 is REVERSED and the case is REMANDED for further proceedings. The award of fees challenged in No. 95–3734 is VACATED.