In re BAKERY AND CONFECTION-ERY UNION AND INDUSTRY IN-TERNATIONAL PENSION FUND PENSION PLAN.

Salvador Martinez, et al., Plaintiffs

v.

The Bakery & Confectionery Union & Industry International Pension Fund and Bakery & Confectionery Union and Industry International Pension Fund Board of Trustees, Defendants.

Ronald Blackwell, et al., Plaintiffs,

v.

The Bakery & Confectionery Union & Industry International Pension Fund; John Beck, Plan Manager; and Bakery & Confectionery Union & Industry International Pension Fund Board of Trustees, Defendants.

Phillip G. Scott and Terry Wayne Finch, individually and as representatives on behalf of a class of similarly situations persons, Plaintiffs,

v.

Bakery & Confectionery Union & Industry International Pension Fund, et al., Defendants.

Terry Moore, Plaintiff,

v.

The Bakery & Confectionery Union & Industry International Pension Fund and Bakery & Confectionery Union and Industry International Pension Fund Board of Trustees, Defendants.

Nos. 11 CV 1471 (VB), 11 CV 9203 (VB), 12 CV 141 (VB), 12 CV 142 (VB), 12 CV 913 (VB).

United States District Court, S.D. New York.

June 6, 2012.

Thomas O. Sinclair, Miles Clayborn Williams, Sinclair Williams, LLC, Birmingham, AL, Scarlett M. Tuley W. Daniel Miles, III, Beasley Allen Crow Methvin Portis & Miles PC, Montgomery, AL, for Scott Plaintiffs in No. 12-cv-00142.

Lynn L. Sarko, Derek W. Loeser, Erin M. Riley, Sarah H. Kimberly, Keller Rohrback L.L.P., Seattle, WA, David S. Preminger, Keller Rohrback L.L.P., New York, NY, Christopher A. Seeger Diogenes P. Kekatos, Seeger Weiss, LLP, New York, NY, William D. Frumkin, Elizabeth Hunter, Sapir & Frumkin LLP, White Plains, NY, for Plaintiffs in No. 11-cv-1471.

Charles J. Fleishman, Paul A. Fleishman, The Fleishman Law Firm, Los Angeles, CA, David P. Martin, The Maurer Law Firm PLLC, Fishkill, NY, R. Brett Adair, Adair Law Firm LLC, Birmingham, AL, David P. Martin, Jason E. Burgett, The Martin Law Group LLC, Tuscaloosa, AL, for All Other Plaintiffs.

Patricia McConnell, Meyer, Suozzi, English & Klein, P.C., New York, NY, Jeremiah A. Collins, Bredhoff & Kaiser, P.L.L.C., Washington, DC, Glenn Rothner, Rothner Segall Greenstone and Leheny, Pasadena, CA, for Defendants.

## MEMORANDUM DECISION

BRICCETTI, District Judge.

These actions involve challenges to a change made to a pension fund in which all plaintiffs participate by dint of having worked in eligible positions as bakers in various factories for various employers throughout the country. After the Court held a joint conference with all parties represented, it was decided that the most efficient manner to resolve these cases would be through motions and cross motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Now pending before the Court are

these motions.[1] For the following reasons, the Court GRANTS plaintiffs' motions and DENIES defendants' motions.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

For purposes of ruling on the motions, the Court accepts the allegations of the operative complaints as true and also reviews exhibits submitted with the motions.

The complaints in these cases allege similar conduct. Plaintiffs are participants in the Bakery and Confectionery Union and Industry International Pension Fund Pension Plan ("Plan"). This action arises from an amendment to the plan that affected how plan participants would be eligible to receive their full pension benefits. Plaintiffs challenge this amendment, alleging it violates Section 204(g) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1054(g).

Defendant plan is an "employee pension benefit plan" within the meaning of ERISA. Under the plan, a participant with 25 years of service is eligible to retire with a "normal" pension at 65 years old. Alternatively, under "Plan C" (also known as the "Golden 90"), when a participant's age (in years and months) combined with his service (in years and months) exceeds 90, the participant may retire at the full benefit level, except that participants who commenced participation after December 3, 1998, must have a minimum of 10 years of service.[2] Similarly, under "Plan G" ("Golden 80"), a participant may retire at the full benefit level when the sum of his age and service equals 80.[3]

Prior to July 1, 2010, a participant could leave covered employment before he reached the 80– or 90–level and then age into the relevant plan when the sums of his age and service reached the relevant level. In addition, the surviving spouse of a participant could defer receipt of the benefit until the decedent would have aged into the full benefit of the plan. The amendment eliminated the ability for participants who were no longer in covered employment to age into the relevant plan. This change is relevant to plaintiffs who were either laid off due to plant closings or reductions in force or those who had accepted buy-outs to retire. Many of these plaintiffs are unable to find work in covered employment.

## DISCUSSION

▇▇▇ At any time after the pleadings close and before trial commences, a party may move for judgment on the pleadings under Rule 12(c). *See Citibank, N.A. v. Morgan Stanley & Co. Int'l, PLC,* 724 F.Supp.2d 407, 414 (S.D.N.Y.2010). "The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Cleveland v. Caplaw Enters.,* 448 F.3d 518, 520 (2d Cir.2006). In a challenge under Rule 12(c), the Court must accept as true the non-movant's allegations and draw all reasonable inferences in the non-movant's favor. *See id.* at 521; *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994). The Court need not accord "[l]egal conclusions,

---

**1.** Plaintiffs in *Martinez* did not file a separate motion for judgment on the pleadings but, with Court approval, joined in the motions filed in the *Scott* and *Blackwell* cases.

**2.** Plaintiffs each allege that they have met the years of service requirement.

**3.** The complaints do not specify what qualifies a participant for one plan versus the other. At the conference held on March 12, 2012, counsel indicated that participation is determined by the participant's employer.

deductions or opinions couched as factual allegations ... a presumption of truthfulness." *In re NYSE Specialists Sec. Litig.,* 503 F.3d 89, 95 (2d Cir.2007). The allegations in a complaint must meet a standard of "plausibility." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 564, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that [plaintiff is entitled to relief]." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

■ "On a 12(c) motion, the court considers the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *L-7 Designs, Inc. v. Old Navy, LLC,* 647 F.3d 419, 422 (2d Cir.2011). In addition, the Court may review any document incorporated by reference in one of the pleadings. *Sira v. Morton,* 380 F.3d 57, 67 (2d Cir.2004). A document is considered incorporated by reference if it is "in a pleading ... adopted by reference elsewhere in the same pleading or in any other pleading...." Fed.R.Civ.P. 10(c). The Court may also consider a document not specifically incorporated by reference but on which the complaint heavily relies and which is integral to the complaint. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir.2002). If the Court is presented with material outside of the pleadings, it should exclude the material in its consideration of the motion. *See id.,* at 154.

ERISA "was enacted for the purpose of assuring employees that they would not be deprived of their reasonably-anticipated pension benefits; an employer was to be prevented from 'pulling the rug out from under' promised retirement benefits upon which his employees had relied during their long years of service." *Amato v. Western Union Int'l, Inc.,* 773 F.2d 1402, 1409 (2d Cir.1985) (citing 29 U.S.C. § 1001(a) (Congressional findings and declaration of policy)). Initially, ERISA did not protect early retirement benefits. *See Gluck v. Unisys Corp.,* 960 F.2d 1168, 1185 (3d Cir.1992) ("ERISA permitted the reduction of early retirement benefits prior to July 31, 1984, but not after.").

■ In 1984, Congress enacted the Retirement Equity Act of 1984, Pub. L. No. 98–397, 98 Stat. 1426 (1984) ("REA"), which amended Section 204(g) of ERISA to protect early retirement benefits in certain circumstances. Section 204(g) created the anti-cutback rule and "was intended to prevent retirement plans from being amended to reduce or eliminate a participant's early retirement subsidy." *Hunger v. AB,* 12 F.3d 118, 119 (8th Cir.1993). It protects "accrued benefits" provided by a plan. ERISA defines an "accrued benefit" as "the individual's accrued benefit determined under the plan and ... expressed in the form of an annual benefit commencing at normal retirement age." 29 U.S.C. § 1002(23). Section 204(g) provides

(1) The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan....

(2) For purposes of paragraph (1), a plan amendment which has the effect of—

(A) eliminating or reducing an early retirement benefit or a retirement-type subsidy (as defined in regulations), or

(B) eliminating an optional form of benefit,

with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits. In the case of a retirement-type subsidy, the preceding sentence shall apply only with respect to a participant who satis-

fies (either before or after the amendment) the preamendment conditions for the subsidy....

29 U.S.C. § 1054(g)(1), (2). "The plain language of the statute reveals that once a benefit is found to be a retirement-type subsidy, it is considered an accrued benefit." *Bellas v. CBS, Inc.*, 221 F.3d 517, 534 (3d Cir.2000); *Amato v. Western Union Int'l, Inc.*, 773 F.2d 1402. *But see Lear Siegler Aerospace Products Holding Corp. v. Smiths Industries, Inc.*, 1990 WL 422417, at *11, 1990 U.S. Dist. LEXIS 2887, at *30 (S.D.N.Y. Mar. 16, 1990) ("Unlike normal retirement benefits, the early retirement subsidy at issue is not an accrued benefit since it is contingent on an employee satisfying the separate age/service requirements."). Based on the plain language of Section 204(g), as stated in *Bellas,* the Plan C and Plan G benefit are early retirement benefits or retirement-type subsidies which constitute accrued benefits.

Defendants' argument relies on the fact that plaintiffs have been separated from service and therefore cannot accrue any more years of service. Defendants assert the legislative history and relevant case law permits them to amend the plan to eliminate the early retirement benefit as to those participants who have already been separated from service. The Court, however, reads the text of the statute and the relevant precedent differently.

In *Ahng v. Allsteel, Inc.,* the Seventh Circuit addressed a situation similar to the one currently before the Court. In *Ahng,* defendant had created a pension plan which permitted employees to receive pensions if they retired with either (a) ten years of service having reached the age of 55 or (b) over 30 years of service. The collective bargaining agreement subsequently amended the terms of the pension plan by limiting the eligibility of early

retirement benefits. In deciding whether the amendment impermissibly eliminated an early retirement benefit, the court first quoted a treatise which explained:

> The statute provides that in the case of a retirement type subsidy, the anti-cutback rule does not apply unless the participant "satisfies (either before or after the amendment) the preamendment conditions for the subsidy." Thus, if a plan is amended to eliminate a subsidized early retirement benefit for employees who have completed 30 years of service, the plan would not be required to provide the benefit to an employee who never completes 30 years of service.

96 F.3d 1033, 1036 (7th Cir.1996) (quoting John H. Langbein and Bruce A. Wolk, *Pension and Employee Benefit Law* 142–43 (2d ed. 1995)). The court approved of this language and held that "as long as an employee satisfies, or will be able to satisfy, the eligibility requirements of the early retirement benefit in effect prior to the amendment, § 204(g) protects the benefit." *Ahng,* 96 F.3d at 1036. Because the plaintiff-employees could establish their eligibility to the pre-amendment requirements for early retirement benefit after the amendment, the amendment violated the anti-cutback rule. *Id.; see also Lockheed Corp. v. Spink,* 517 U.S. 882, 887, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996) (ERISA guarantees that "if a worker has been promised a defined pension benefit upon retirement—and if he has fulfilled whatever conditions are required to obtain a vested benefit—he will actually receive it."); *Gillis v. Hoechst Celanese Corp.,* 4 F.3d 1137 (3d Cir.1993).

This situation is to be contrasted with cases where the employees could not meet the pre-amendment eligibility requirements following the amendment. For example, in *Hunger v. AB,* the Eighth Circuit Court of Appeals held that plaintiffs could not maintain a claim under Section

204(g) when eligibility for the early retirement benefit was premised on continued tenure with the employer. Because the employees would never be eligible for the benefit because they no longer worked for the employer, the plan amendment did not violate Section 204(g). Eligibility in *Hunger* was based on meeting certain age and length-of-service requirements. Plaintiffs would never be able to meet the service requirement because if their employment had ended, they would never "grow into" the benefit. *Hunger*, 12 F.3d at 120, 121; *see also Shaver v. Siemens Corp.*, 670 F.3d 462, 488 (3d Cir.2012) ("[S]ection 204(g) does not protect from cutback an early retirement benefit for a plan participant who has not satisfied *and* never can satisfy the conditions for receiving the benefits that are subject to the cutback.") (emphasis added); *Gillis v. Hoechst Celanese Corp.*, 4 F.3d at 1151–1152 (Stapleton, J., concurring and dissenting) ("When § 1054(g) and § 1344 are read together, one finds that where a participant has qualified for an early retirement benefit prior to a termination or may thereafter qualify for that benefit by aging and giving additional service to the plan sponsor, the present value of the benefit has to be paid or set aside on termination. On the other hand, where, at the time of termination, a participant has not qualified for such a benefit and will not be able to do so in the future because the opportunity to give service to the plan sponsor will not exist, nothing need be paid or set aside on termination with respect to the early retirement benefit.").

Accordingly, in this case, as in *Ahng*, the plan amendment is prohibited by Section 204(g). Eligibility for plaintiffs is based on a sum of their respective ages and lengths of service. Because they can continue to age into pension benefits even after they have separated from their respective employers, Section 204(g) applies. And because plaintiffs may, post-amendment, satisfy the pre-amendment requirements to obtaining a Plan C or Plan G pension, the anti–cutback rule bars the amendment.[4]

Defendants rely on language from a Senate Report on the REA which stated

> The bill generally protects the accrual of benefits with respect to participants who have met the requirements for a benefit as of the time a plan is amended and participants who subsequently meet the preamendment requirements. The bill does not, however, prevent the reduction of a subsidy in the case of a participant who, at the time of separation from service (whether before or after the plan amendment), has not met the preamendment requirements.

S. Rep. No. 575, 98th Cong., 2d Sess. 28 (1984), reprinted in, 1984 U.S.C.C.A.N. 2547, 2574. While this report is informative, its language does not track completely with the actual language enacted into law. *United States v. Kozeny*, 541 F.3d 166, 171 (2d Cir.2008) ("Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose."). In fact, the second sentence seems to be at odds with the first sentence insofar as the first sentence refers to individuals who can meet the preamendment requirements post-amendment, while the second sentence introduces the element of separation and eliminates eligibility at the time of separation. It also assumes eligibility for the pension ceases with the termination of employment. Many cases involve pensions that require an employee to

---

4. As all plaintiffs allege they either meet or are unaffected by the 1998 requirement that participants have ten years of service, they are eligible to age into the pension.

accrue a certain length of service which cannot be reached after termination. *See, e.g., Hunger v. AB,* 12 F.3d 118. This is not one of those cases. Therefore, as the Senate Report provides, plaintiffs were able to "meet the preamendment requirements" post-separation.

Defendants also rely on the Third Circuit's decision in *Berger v. Edgewater Steel,* 911 F.2d 911 (3d Cir.1990). In *Berger,* the court held Section 204(g) was not implicated when the employees did not meet the requirements for the plan at the time of the amendment. This case was subsequently read as applying only when there was a separation of service and "no possibility that the employees would later meet the eligibility requirements for early retirement benefits." *Gillis v. Hoechst Celanese Corp.,* 4 F.3d at 1147 (citing *Berger,* 911 F.2d at 915). By contrast, there is no dispute that plaintiffs in the instant cases can meet the eligibility requirement post-separation.

Finally, the Court believes the court in *Lear Siegler Aerospace Products Holding Corp. v. Smiths Industries, Inc.,* 1990 WL 422417, 1990 U.S. Dist. LEXIS 2887, did not properly read the statutory text of Section 204(g). In holding that "an early retirement subsidy shall not be entitled to protection as an accrued benefit unless the employee-participant satisfies the eligibility requirements for that benefit subsidy prior to his termination of service," the court read a requirement into Section 204(g) for continued employment where none existed. *Id.,* 1990 WL 422417, at *12, 1990 U.S. Dist. LEXIS 2887, at *35; *See Gillis v. Hoechst Celanese Corp.,* 4 F.3d at 1146 ("Initially, we note that the 'separated from service' language does not expressly appear in Section 204(g) of ERISA."); *see also Jimenez v. Quarterman,* 555 U.S. 113, 118, 129 S.Ct. 681, 172 L.Ed.2d 475 (2009) ("It is well established

that, when the statutory language is plain, we must enforce it according to its terms."). Although the Senate Report refers to this requirement, this Court does not believe this understanding of the bill manifested itself in the language of the REA when it was enacted. Indeed, relying on the Senate Report only "muddies the waters." *United States v. Gonzales,* 520 U.S. 1, 6, 117 S.Ct. 1032, 137 L.Ed.2d 132 (1997).

In addition, plaintiffs in *Lear Siegler* could not qualify for the pension plan because, once their employer was sold and they were no longer working for the successor, plaintiffs could not accrue additional years of service to satisfy the requirements.

■ In light of the ordinary meaning of the text of Section 204(g) and the Seventh Circuit's opinion in *Ahng v. Allsteel, Inc.,* the Court concludes that the termination of the Plan C and Plan G pensions violated the anti-cutback rule insofar as it eliminated an accrued benefit under ERISA for those employees who had reached ten years of service. Having decided the amendment violates the anti-cutback rule, the Court need not address plaintiffs' argument that the plan itself prohibits the amendment. Also, because all of the plaintiffs have already met the years of service requirement, the Court need not decide whether the anti-cutback rule protects plan participants who have not met the years of service requirement.

As discussed at the conference held on March 12, resolution of the cross motions for judgment on the pleadings renders the motions for class certification moot, and they are hereby denied without prejudice. Similarly, defendants' motion to dismiss in the consolidated cases (Doc. # 36) is hereby denied. Finally, plaintiffs in the *Blackwell* matter had filed a motion for judgment on the pleadings in the Northern

District of Alabama, which remained pending even after the case was transferred to this Court. That motion (Doc. # 32) is also denied as moot.

## CONCLUSION

For the foregoing reasons, plaintiffs' motions for judgment on the pleadings are GRANTED and defendants' motion are DENIED.

The Court will hold a telephone status conference in this case on June 27, 2012, at 9:30 a.m. to address any next steps in this case. If the parties believe this case can be closed without any further discussion, they should so notify the Court in writing. If the parties have different understandings about the posture of this case, especially in light of the fact that the Court has not addressed certain plaintiffs' state law claims, the Court will hold the conference to determine the best course of action going forward. Counsel for the *Alcantara* plaintiffs is instructed to arrange all counsel on the line and then call the Court at (914) 390–4261.

The Clerk is instructed to terminate the pending motions. (Case No. 11 CV 1471, Docs. # 32, 36, 49, 51; Case No. 11 CV 9203, Doc. # 41; Case No. 12 CV 141, Docs. # 32, 46, 54; Case No. 12 CV 142, Docs. # 28, 49, 66; Case No. 12 CV 913, Docs. # 43, 49.)

SO ORDERED.