12-4834-cv (L)
*Alcantara v. Bakery & Confectionery Union & Indus. Int'l Pension Fund Pension Plan*

# In the
# United States Court of Appeals
## For the Second Circuit

_____

August Term 2013
Nos. 12-4834-cv, 12-4839-cv, 12-4851-cv, 12-4861-cv, 12-4912-cv

RAFAEL ALCANTARA, INDIVIDUALLY, AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, ALONSO GOMEZ, INDIVIDUALLY, AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, CELESTINO JUAREZ, INDIVIDUALLY, AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, VASILICHIA BABU, INDIVIDUALLY, AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, ANGEL DE LA CRUZ, INDIVIDUALLY, AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, KHIM CHAND, INDIVIDUALLY, AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, TESFAYE GHEBREMEDHIN, INDIVIDUALLY, AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, RATHIN DUTTA GUPTA, INDIVIDUALLY, AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, LUIS MEJIA, INDIVIDUALLY, AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, ANTONIO MEROLLA, INDIVIDUALLY, AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, ROLANDO MONTANO, INDIVIDUALLY, AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, RUSSELL NEUBERT, INDIVIDUALLY, AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, TAGLIARENI SALVATORE, INDIVIDUALLY, AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, MUSOVIC SMAIL, INDIVIDUALLY, AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, JUAN F. TORRES, INDIVIDUALLY, AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

KENNETH KERN, MELVIN MENARD, GARRETT SCHOL, GUY STALTER, ALMOND REID, MICHAEL D'ANTONIO, PHILLIP ROGERS, DONALD SCROGHAM, BRIAN K. FOWLER, SR., JOSEPH ALTAMORE, INDIVIDUALLY, AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, LESLIE DURHAM, RANDALL FARMER, RODNEY SIMPSON, JAMES THOMAS, JAMES SMITH, STEVEN SHANKLES, MATTIE DAVIS, JOYCE SLATON, RICKEY MEDLEY, KATHY BENEFIELD, TIMOTHY WRIGHT, M.D., RODNEY FOSTER, SANDRA BRANDON, EDDIE WRIGHT, TOMMY WOMACK, ROGER WOOTEN, RICKEY WILBORN, GARY WHITMORE, WALTER WATSON, DANNY WHITE, TERRY WAGNER, DANIEL THURMAN, RICKY TEAT, BEECHER TANNER, JR., MICHAEL SLATON, TOMMY SIBERT, DONNA SMITH, CHRIS SMITH, GARY SARRATT, CHARLES ROGERS, WILLIAM RICHEY, GUY RICE, PHYLLIS CRAZE, GARY MEDLEY, RANDALL MOORE, MARK MONEY, MICHAEL NORRIS, TONY NELSON, DONALD JONES, DAVID LAWMAN, TONEY IVEY, ROBERT JONES, LARRY INGLE, BILLY HOLKEM, HERBERT HEAD, PAMULA HARPER, RODNEY BROTHERS, DENNIS BRANDON, CONNIE BURGESS, RUTH BAILEY, JIMMY AMMONS, KENNETH BEARDEN, NICKEY GORHAM, RALPH FLYNN, JAMES FERGUSON, WALTER ESLOON, GLENDA DUPREE, ROGER DAVIS, ALAN DALTON, JAMES CRAWFORD, DOUGLAS COMBS, MELISSA CISCO, BILLY COOK, CHARLES COKER, BILLY CATHEY, KENNETH BURT, DANIEL CARTER, EDWARD BEARDEN, SHEILA HAMMOND, SALVADOR MARTINEZ, RANDALL GARRISON, LESLIE CADDICK, JOSEPH BARELA, SHEILA JUAREZ, ROGER GONZALEZ, PHILLIP G. SCOTT, INDIVIDUALLY AND AS REPRESENTATIVE ON BEHALF OF A CLASS OF SIMILARLY SITUATED PERSONS, TERRY WAYNE FINCH, TERRY MOORE, RONALD BLACKWELL,
*Plaintiffs-Appellees*,

JOHN STEVEN CHAMBERS, KEVIN WATERS,
*Plaintiffs*,

*v.*

BAKERY AND CONFECTIONERY UNION AND INDUSTRY INTERNATIONAL PENSION FUND PENSION PLAN, BAKERY AND CONFECTIONERY UNION AND INDUSTRY INTERNATIONAL PENSION FUND BOARD OF TRUSTEES, AS PLAN ADMINISTRATOR, JOHN DOES 3-10, AS TRUSTEES OF THE BAKERY AND CONFECTIONERY UNION AND INDUSTRY INTERNATIONAL PENSION FUND, FRANK HURT, STEVEN V. BERTELLI, DAVID B. DURKEE, ANTHONY JOHNSON, ART MONTMINY, ROBERT OAKLEY, RANDY D. ROARK, JOSEPH THIBODEAU, RICHARD B. COOK, DAN CRAIG, THOMAS G. KIRCHNER, JON MCPHERSON, LOU MINELLA, JOHN WAGNER, JOHN DOE NO. 1, JOHN DOE NO. 2, AS TRUSTEES OF THE BAKERY AND CONFECTIONERY UNION AND INDUSTRY INTERNATIONAL PENSION FUND, THE BAKERY AND CONFECTIONERY UNION AND INDUSTRY INTERNATIONAL PENSION FUND, JOHN BECK, PLAN MANAGER, BAKERY AND CONFECTIONERY UNION AND INDUSTRY INTERNATIONAL PENSION FUND BOARD OF TRUSTEES, BAKERY AND CONFECTIONERY UNION AND INDUSTRY INTERNATIONAL PENSION FUND,
*Defendants-Appellants.*[1]

————

Appeal from the United States District Court
for the Southern District of New York.
Nos. 11 Civ. 1471, 11 Civ. 9203, 12 Civ. 141,
12 Civ. 142, 12 Civ. 913 — Vincent L. Briccetti, *Judge*.

————

ARGUED: NOVEMBER 20, 2013
DECIDED: MAY 1, 2014

————

---

[1]The Clerk of Court is directed to amend the official caption to conform to the listing above.

Before: KEARSE, JACOBS, and B.D. PARKER, *Circuit Judges.*

_____

Appeal from a judgment of the United States District Court for the Southern District of New York (Briccetti, *J.*). The district court held that the anti-cutback rule in § 204(g) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1054(g), precludes plan amendments that reduce retirement-type subsidies for Plaintiffs-Appellees who ceased employment without satisfying the preamendment conditions for the subsidy, but who could later satisfy the conditions without returning to work. We **AFFIRM** the judgment of the district court.

_____

JULIA PENNY CLARK (Jeremiah A. Collins, Osvaldo Vazquez, *on the brief*), Bredhoff & Kaiser PLLC, Washington, DC, *for Bakery and Confectionery Union and Industry International Pension Fund Pension Plan, Bakery and Confectionery Union and Industry International Pension Fund Board of Trustees, as Plan Administrator, John Does 3-10, as Trustees of the Bakery and Confectionery Union and Industry International Pension Fund, Frank Hurt, Steven V. Bertelli, David B. Durkee, Anthony Johnson, Art Montminy, Robert Oakley, Randy D. Roark, Joseph Thibodeau, Richard B. Cook, Dan Craig, Thomas G. Kirchner, Jon McPherson, Lou Minella, John Wagner, John Doe No. 1, John Doe No. 2, as Trustees of the Bakery and Confectionery Union and Industry International Pension Fund, The Bakery and Confectionery Union and Industry International Pension Fund, John Beck, Plant Manager, Bakery and Confectionery Union and Industry International*

*Pension Fund Board of Trustees, Bakery and Confectionery Union and Industry International Pension Fund*.

BENJAMIN GOULD (Lynn L. Sarko, Derek W. Loeser, David S. Preminger, Erin M. Riley, Alison S. Gaffney, *on the brief*), Keller Rohrback LLP, Seattle, WA, Chrisopher A. Seeger, Diogenes P. Kekatos, Seeger Weiss LLP, New York, NY, William D. Frumkin, Elizabeth E. Hunter, Frumkin & Hunter LLP, White Plains, NY *for Alcantara Plaintiffs*.

Thomas O. Sinclair (M. Clayborn Williams, *on the brief*), Sinclair Williams LLC, Birmingham, AL, *for Phillip G. Scott and Terry Wayne Finch*.

DAVID P. MARTIN, The Martin Law Group, LLC, Tuscaloosa, AL, Robert Brett Adair, Adair Law Firm, LLC, Birmingham, AL, *for Blackwell, Martinez, and Moore Plaintiffs*.

————

BARRINGTON D. PARKER, *Circuit Judge*:

In this appeal from a judgment of the United States District Court for the Southern District of New York (Vincent L. Briccetti, *Judge*) we consider whether the anti-cutback rule in § 204(g) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1054(g), precludes plan amendments that reduce retirement-type subsidies for plan participants who have ceased employment without satisfying the preamendment conditions for the subsidy, but who could later satisfy the preamendment conditions without

returning to work.  We hold that the rule protects such benefits and, accordingly, we affirm the judgment of the district court.

## I. BACKGROUND

The relevant facts are uncontested.  Defendants-Appellants are the Bakery and Confectionery Union and Industry International Pension Fund Pension Plan (the "Plan"), a multiemployer defined-benefit pension plan, and its Board of Trustees.  The Plaintiffs-Appellees are participants in the Plan.  The plaintiffs' former employers are parties to collective bargaining agreements with local unions of the Bakery, Confectionery, Tobacco Workers and Grain Millers International Union.

The Plan provides for a range of benefits.  The standard benefit, payable at age 65 — the "normal retirement age" under the Plan — was labeled Plan A.  Participants could elect to receive their Plan A pension benefits as early as age 55, but at an actuarially reduced level that reflected the earlier (and longer) expected stream of payments.  Certain employers elected to offer additional subsidized early retirement benefits that were not actuarially reduced.  Two of these plans, Plan G (the "Golden 80 Plan"), and Plan C (the "Golden 90 Plan"), are at issue here.  Under those Plans, a participant who had completed at least ten years of service with a participating employer, and whose combination of his age and years of service totaled 80 or 90 years, respectively, could retire and receive full pension benefits.

Prior to July 2010, the Plan allowed a participant to "age into" Golden 80 or 90 benefits.  This meant that a participant who had

achieved the ten-year minimum service requirement, but who had left covered employment before achieving the requisite 80- or 90-year age-plus-years-of-service level, would still become eligible for Golden 80 or 90 benefits as soon as his age-plus-years-of-service reached the required 80- or 90-year requirement.

In July 2010, the Trustees amended the Plan to eliminate the option to "age into" benefits and to require that a participant be employed at the time he qualified for Golden 80 or 90 benefits. The amendment did not affect those participants who had already aged into Golden 80 or 90 benefits. The amendment affected only those participants who had completed the ten-year minimum service requirement, but who had not yet reached the requisite age-plus-years-of-service level and were no longer working for an employer participating in the Golden 80 or 90 Plans. The brunt of this change, according to plaintiffs, fell on former employees who were laid off due to either plant closings or reductions in force and subsequently were unable to find work in the industry.

Participants who lost their opportunity to qualify for Golden 80 or 90 benefits as a result of the amendment filed various suits alleging that the plan amendment violated § 204(g), ERISA's anti-cutback rule, which prohibits plan amendments that reduce or eliminate certain pension benefits. In response, the Plan contended that the rule protected only those Golden 80 and 90 Plan participants who remained in covered employment at the time they achieved the required age-plus-years-of-service level.

The cases were consolidated and the parties cross-moved for judgment on the pleadings. The district court held that the amendment violated the anti-cutback rule. *In re Bakery & Confectionery Union & Indus. Int'l Pension Fund Pension Plan*, 865 F. Supp. 2d 469, 474-75 (S.D.N.Y. 2012). Judge Briccetti reasoned that "[e]ligibility for plaintiffs is based on a sum of their respective ages and lengths of service. Because they can continue to age into pension benefits even after they have separated from their respective employers, Section 204(g) applies. And because plaintiffs may, post-amendment, satisfy the pre-amendment requirements to obtaining a Plan C or Plan G pension, the anticutback rule bars the amendment." *Id.* at 474. The district court entered judgment, the defendants appealed, and the appeals were consolidated. *See* Fed. R. Civ. P. 54(b). We affirm.

## II. DISCUSSION

We review *de novo* a judgment entered on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *Kirkendall v. Halliburton, Inc.*, 707 F.3d 173, 178 (2d Cir. 2013). "In deciding a Rule 12(c) motion, we apply the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party." *Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004).

The anti-cutback rule, ERISA § 204(g), provides as follows:

(g) Decrease of accrued benefits through amendment of plan

> **(1)** The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan [except in certain circumstances not applicable here].

> **(2)** For purposes of paragraph (1), a plan amendment which has the effect of--

> > **(A)** eliminating or reducing an early retirement benefit or a retirement-type subsidy (as defined in regulations), or

> > **(B)** eliminating an optional form of benefit,

> with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits. In the case of a retirement-type subsidy, the preceding sentence shall apply only with respect to a participant who satisfies (either before or after the amendment) the preamendment conditions for the subsidy.

29 U.S.C. § 1054(g).

The issues presented on appeal are whether the Golden 80 and 90 Plans are considered "accrued benefits" under § 204(g)(1) or "retirement-type subsid[ies]" under § 204(g)(2) for the purposes of the anti-cutback rule, and, if the latter, whether plaintiffs, as former employees, can "satisf[y] (either before or after the amendment) the preamendment conditions for the subsidy."

In our view, it is clear that the Golden 80 and 90 Plans are "retirement-type subsid[ies]" that qualify for protection under § 204(g)(2). The term "retirement-type subsidy" is defined in IRS regulations interpreting a parallel provision of the Internal Revenue Code.[2] A retirement-type subsidy is:

> the excess, if any, of the actuarial present value of a retirement-type benefit over the actuarial present value of the accrued benefit commencing at normal retirement age or at actual commencement date, if later, with both such actuarial present values determined as of the date the retirement-type benefit commences. Examples of retirement-type subsidies include a subsidized early retirement benefit . . . .

26 C.F.R. § 1.411(d)–3(g)(6)(iv).

The Golden 80 and 90 Plans fall within this definition. The Plans provide a "retirement-type benefit" because they provide a "benefit under a defined benefit plan . . . that . . . continues after retirement, and is not an ancillary benefit." *Id.* § 1.411(d)–3(g)(6)(iii). It is undisputed that the actuarial value of the Golden 80 and 90 Plans at the time they begin distributing benefits is in "excess" of "the actuarial present value of the accrued benefit commencing at normal retirement age." *Id.* § 1.411(d)–3(g)(6)(iv). Accordingly, for the purposes of the anti-cutback rule, the Golden 80 and 90 Plans are retirement-type subsidies.

The evolution of § 204(g) reinforces this conclusion. Prior to the passage of the Retirement Equity Act of 1984 ("REA"), Pub. L. No. 98-397, 98 Stat. 1426, the anti-cutback rule was limited to the

---

[2] Pursuant to regulations issued by the Secretary of Labor, the IRS regulations are applicable to the interpretation of sections 202 through 204 of ERISA. *See* 29 C.F.R. § 2530.200a-2.

text now included in § 204(g)(1) and thus applied only to "accrued benefits." Whether early retirement benefits, retirement-type subsidies, and optional forms of benefits were protected was unclear because the statute did not specifically address those types of benefits.

Congress recognized that these benefits could be important components of retirement packages and passed the REA in part to limit the circumstances under which these benefits could be reduced or eliminated through plan amendments. S. Rep. No. 98-575, at 27 (1984). To do so, Congress added § 204(g)(2) which did not disturb the existing protection for "accrued benefits," but went on to provide that reductions to early retirement benefits, retirement-type subsidies, and optional forms of benefits were to be "treated as" reductions of "accrued benefits." Accordingly, where a benefit qualifies as a retirement-type subsidy, it is subject to § 204(g)(2) of the anti-cutback rule.

Section 204(g)(2) contains an additional provision, the meaning of which is the primary point of disagreement on this appeal. Under that provision, the anti-cutback rule applies to retirement-type subsidies, "only with respect to a participant who satisfies (either before or after the amendment) the preamendment conditions for the subsidy." 29 U.S.C. § 1054(g)(2). The plaintiffs would have us read the "only with respect to a participant . . ." language as simply requiring that a participant "satisf[y] (either before or after the amendment) the preamendment conditions for the subsidy" to have their benefits protected by the rule. The plaintiffs contend that they have satisfied (or will satisfy) this requirement. The preamendment Plan, they argue, conditioned Golden 80 or 90 benefits on the sum of plaintiffs' years-of-employment plus age equaling 80 or 90, respectively. Because plaintiffs either have seen, or if they continue to age will see, that

number equal 80 or 90 and because the Plan has no time limitation within which a participant must reach that number, the preamendment condition, they contend, is or will be satisfied.

The Plan agrees that Golden 80 and 90 Plans are retirement-type subsidies, but insists that § 204(g)(2) contains an implicit "continued employment" requirement, under which a participant, to be protected by the anti-cutback rule, must have remain in covered employment until he becomes eligible for the subsidy. The Plan insists that the "only with respect to a participant . . ." language is intended to have a limiting effect on the application of the anti-cutback rule to retirement-type subsidies and that, read literally as the plaintiffs urge, the sentence has none because a participant could never be eligible for a subsidy without "satisf[ying] . . . the preamendment conditions for the subsidy." On the basis of this reading, the Plan contends that the scope of the limitation is unclear and can be understood only by resort to the legislative history, which the Plan argues reveals that Congress intended to limit the protection of the anti-cutback rule to current employees. For several reasons, we disagree with the Plan's approach.

Legislative interpretation begins with the plain text of the statute and, where the text is unambiguous, also ends there because the "judicial inquiry is complete." *Hedges v. Obama*, 724 F.3d 170, 189 (2d Cir. 2013). We read the provision as straightforwardly applying to participants, such as the plaintiffs, who qualified for the subsidy before the amendment or who could do so afterwards. The text says nothing about satisfying the preamendment conditions "while employed," or before "separating from service," or anything to that effect. To the contrary, the statutory wording cuts against such a requirement. Section 204(g)(2), which requires that a "participant" satisfy the preamendment conditions of the subsidy in order to enjoy the protections of the anti-cutback rule, is elucidated by the

definition of a "participant" under ERISA as "any employee *or former employee* of an employer, . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan." 29 U.S.C. § 1002(7) (emphasis added). Consequently, it is immaterial that some plaintiffs had not yet satisfied the preamendment age-level conditions when they left covered employment, because § 204(g)'s prohibition on cutbacks applies to former as well as to current employees.

The Plan's approach would require us to delve into the complex legislative history of ERISA and the REA in search of limiting principles that Congress did not include in the text. This "would result not in a construction of the statute, but, in effect, an enlargement of it by the court, so that what was omitted . . . may be included within its scope." *Lamie v. U.S. Tr.*, 540 U.S. 526, 538 (2004) (internal quotation marks and brackets omitted). Accordingly, we are not inclined to overlook the plaintiffs' straightforward and reasonable interpretation of the statute in favor of one that renders the text ambiguous and resorts to legislative history or policy arguments to give it meaning. S*ee also Fedorenko v. United States*, 449 U.S. 490, 513 (1981).

This conclusion is consistent with decisions from other circuits recognizing that a participant may "grow into" eligibility for retirement-type subsidy benefits under the anti-cutback rule by satisfying the eligibility requirements *after* the date of the amendment. *See, e.g.*, *Bellas v. CBS, Inc.*, 221 F.3d 517, 521 (3d Cir. 2000); *Ahng v. Allsteel, Inc.*, 96 F.3d 1033, 1036-37 (7th Cir. 1996); *Harms v. Cavenham Forest Indus., Inc.*, 984 F.2d 686, 692 (5th Cir. 1993); *Gillis v. Hoechst Celanese Corp.*, 4 F.3d 1137, 1146 (3d Cir. 1993); *Hunger v. AB*, 12 F.3d 118, 121 (8th Cir. 1993). As the Seventh Circuit explained in *Ahng*, "[t]he courts of appeals that have ruled on an employee's right to 'grow into' early retirement benefits have . . .

uniformly held that as long as an employee satisfies, *or will be able to satisfy*, the eligibility requirements of the early retirement benefit in effect prior to the amendment, § 204(g) protects the benefit."  96 F.3d at 1036 (emphasis added).

Other courts have denied a participant the ability to "grow into" benefits only where he has ceased employment without completing the minimum years of service necessary to become eligible for the retirement-type subsidy or failed to satisfy some other preamendment condition that cannot be cured.  In that situation, courts have permitted the reduction or elimination of the benefits because the participant, even without the amendment, would never have been able to satisfy the preamendment conditions of the subsidy.  *See Shaver v. Siemens Corp.*, 670 F.3d 462, 490-91 (3d Cir. 2012) (denying application of § 204(g)(2) because service with successor employee "forever disqualifie[d the participants] from receiving . . . benefits under th[e] plan" which was "a prohibition that the passage of time cannot cure"); *Hunger*, 12 F.3d at 121; *Berger v. Edgewater Steel Co.*, 911 F.2d 911, 918 (3d Cir. 1990).  In contrast, the plaintiffs here all have, or will, become eligible for the Golden 80 or 90 benefits simply through the passage of time.

For these reasons we hold that the plaintiffs have satisfied (or will satisfy) the preamendment conditions and their Golden 80 and 90 benefits are protected by the anti-cutback rule.

**CONCLUSION**

The judgment of the District Court is affirmed.