Juan M. REYES, et al., Plaintiffs,

v.

BAKERY AND CONFECTIONERY UNION AND INDUSTRY INTERNATIONAL PENSION FUND, et al., Defendants.

Case No. 14-cv-05596-JST

United States District Court,
N.D. California.

Signed March 22, 2016

Geoffrey V. White, Law Office of Geoffrey V. White, Orinda, CA, Elizabeth Evelyn Hunter, William D. Frumkin, Frumkin Hunter LLP, White Plains, NY, Judith Lynne Spanier, Nancy Kaboolian, Abbey Spanier, LLP, New York, NY, Thomas Sinclair, Sinclair Law Firm, Birmingham, AL, for Plaintiffs.

Concepcion E. Lozano-Batista, Emily P. Rich, Weinberg Roger & Rosenfeld A Professional Corporation, Alameda, CA, James Graham Lake, Julia Penny Clark, Robert W. Alexander, Bredhoff & Kaiser PLLC, Washington, DC, for Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' JUDGMENT ON THE PLEADINGS

### ECF No. 73

JON S. TIGAR, United States District Judge

Before the Court is Defendants' Motion for Judgment on the Pleadings. ECF No. 73. Plaintiffs oppose the motion. ECF No. 79. The Court will grant the motion in part and deny it in part.

## I. BACKGROUND

This is a putative class action under the Employee Retirement Income Security Act of 1974 ("ERISA") and the Pension Protection Act of 2006 ("PPA"), challenging an amendment to the "Golden 80" and "Golden 90" adjustable benefits by the Bakery and Confectionary Union and Industry International Pension Fund (the "Pension Fund"), a multi-employer defined benefit pension plan. First Amended Complaint ("FAC"), ECF No. 44 ¶ 1.

■ This is the second time that the Pension Fund has attempted to implement such an amendment. The Pension Fund's first attempt, in July 2010, was invalidated by a district court in New York, which found that the amendment violated ERISA's "anti-cutback rule." See In re Bakery and Confectionery Union and Indus. Int'l Pension Fund Pension Plan, 865 F.Supp.2d 469, 474 (S.D.N.Y.2012), aff'd Alcantara v. Bakery and Confectionery Union and Indus. Int'l Pension Fund Pension Plan, 751 F.3d 71 (2d Cir.2014). "With few exceptions, the 'anti-cutback' rule of [ERISA] prohibits any amendment of a pension plan that would reduce a participant's 'accrued benefit.' " Cent. Laborers'

Pension Fund v. Heinz, 541 U.S. 739, 741, 124 S.Ct. 2230, 2234, 159 L.Ed.2d 46 (2004) (citing 88 Stat. 858, 29 U.S.C. § 1054(g)).

The Pension Fund argues that this second attempt is valid under the PPA's provisions regarding funds that have been certified as being in "critical" status.

### A. 2010 Amendment and New York Case

Plaintiffs, and the other class members, are participants in the Pension Fund. FAC ¶ 4. The Pension Fund covers tens of thousands of participants throughout the U.S. Id. ¶ 26. Defendants include the Pension Fund, its Board of Trustees, and individually named Trustees. Id. ¶¶ 15–17.

A participant in the Pension Fund with at least twenty-five years of service is typically eligible to retire with full benefits at age 65. Certain employers offered participants a subsidized early retirement benefit called the "the Golden 80" and "the Golden 90" plans. Id. ¶ 29. Under those plans, a participant was eligible to receive full retirement benefits if her combined age and years of service were equal to 80 or 90. Id.

The amendments at issue concern a participant's ability to "age into" the Golden 80 and Golden 90 plans. Id. ¶ 31. Prior to the amendments, participants could leave their employment before the sum of their age and service equaled 80 or 90 years, but could later "age into" receiving the full benefits when the sum reached 80 or 90. Id. For example, a participant could retire at age 58 with 20 years of service, and then begin to receive full benefits two years later under the Golden 80 Plan upon turning 60 (i.e., 60 + 20 = 80). The amendment at issue in this case eliminated the ability to "age into" the Golden 80 and Golden 90 plans. Id. ¶¶ 33, 44.

The Pension Fund previously attempted to implement an identical amendment in July 2010. FAC ¶ 33, 44. Various participants filed lawsuits in federal court in New York, challenging the amendment on grounds that it violated 29 U.S.C. § 1054(g), ERISA's anti-cutback rule. Id. ¶ 34. On June 6, 2012, the New York district court held that the Fund's 2010 amendments violated ERISA's anti-cutback provision and entered judgment against the Fund on November 11, 2012. Id. ¶¶ 42, 45; see also In re Bakery and Confectionery Union, 865 F.Supp.2d at 475–76. The Second Circuit affirmed. Alcantara v. Bakery and Confectionery Union and Indus. Int'l Pension Fund Pension Plan, 751 F.3d 71 (2d Cir.2014).

### B. 2012 Amendment

While litigation was still ongoing in the New York case, the Pension Fund's actuary, The Segal Group, certified the Fund as being in "critical status" under the PPA on March 30, 2012. ECF No. 73 at 6. On April 27, 2012 the Fund sent out a Notice of Critical Status to participants, reporting that there were funding problems and advising that the Fund might adopt a rehabilitation plan that would reduce or eliminate certain benefits. FAC ¶¶ 38, 39. The Notice of Critical Status listed the Golden 80 and 90 plans as possible candidates for elimination. Id. ¶ 39.

On November 7, 2012, four days before the New York district court entered judgment, the Fund adopted a Rehabilitation Plan. Id. ¶ 43. The Rehabilitation Plan stated, among other things, that participants' ability to age into the Golden 80 and 90 plans would be eliminated as of April 30, 2012. Id. ¶ 44. The Plan explained that this change was identical to the 2010 amendment except that it would be effective on April 30, 2012 instead of July 1, 2010, as previously proposed. Id. On November 14, 2012, the Fund issued a notice to employers, union representatives, and participants describing the reductions contained in the Rehabilitation Plan. Id. ¶ 46.

Defendants allege that the new amendment, unlike the 2010 amendment, is valid because it was implemented in accordance with the PPA. ECF No. 73 at 7. The PPA was created, in part, to address "the problems associated with underfunded pension plans," and "introduced a number of mechanisms aimed at stabilizing pension plans and ensuring they remain solvent." Trustees of Local 138 Pension Trust Fund v. F.W. Honerkamp Co., 692 F.3d 127, 130 (2d Cir.2012). Among the PPA's provisions are "measures designed to protect and restore multiemployer pension plans in danger of being unable to meet their pension distribution obligations in the near future." Id. Under the PPA, a pension plan may be certified as "endangered" if it is less than eighty percent funded, or as "critical" if it is less than sixty-five percent funded. Id. The PPA assigns the responsibility of certifying the financial status of the fund to the plan's actuary. 29 U.S.C. § 1085(b)(3). If a fund is designated as being in "critical status," then the fund sponsor must adopt a rehabilitation plan. Id. at § 1085(e)(3). ERISA's anti-cutback rule, 29 U.S.C. § 1054(g), would typically preclude many benefit changes, but a provision of the PPA provides an exception that permits reductions of "adjustable benefits" when a fund is in critical status. See 29 U.S.C. 1085(e)(8). Plaintiffs do not dispute that the "aging into" provision of the Golden 80 and 90 plans is the type of adjustable benefit that can be reduced or diminished under a rehabilitation plan, provided the other requirements of the PPA are met.

Plaintiffs filed this action on December 23, 2014. See ECF No. 1. In their First Amended Complaint, Plaintiffs make four claims against Defendants: (1) Defendants improperly notified Plaintiffs of the amendment, (2) Defendants were unreasonable in their certification of the Pension Fund as being in a "critical status," (3) Trustees breached their fiduciary duty by certifying the Pension Fund was in a "crit-ical status" when they knew this to be untrue, and (4) Trustees breached their fiduciary duty because the amendment favors some participants over others. FAC ¶¶ 58–87. On September 22, 2015, the Court granted an unopposed motion for class certification. ECF No. 72.

Defendants now bring this Motion for Judgment on the Pleadings. ECF No. 73.

## II. LEGAL STANDARD

██ Defendants' Motion for Judgment on the Pleadings is governed by Federal Rule of Civil Procedure 12(c), which provides, "After pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The standard governing a Rule 12(c) motion is essentially the same as that governing a Rule 12(b)(6) motion. Dworkin v. Hustler Magazine Inc., 867 F.2d 1188, 1192 (9th Cir.1989). A Rule 12(c) motion will only be granted when, viewing the facts as presented in the pleadings in a light most favorable to the plaintiffs, and accepting those facts as true, the moving party is entitled to judgment as a matter of law. Hoeft v. Tucson Unified School Dist., 967 F.2d 1298, 1301 n. 2 (9th Cir.1992) ("In reviewing the defendants' motions under Fed. R. Civ. P. 12(c), the district court views the facts as presented in the pleadings in the light most favorable to the plaintiffs, accepting as true all the allegations in their complaint and treating as false those allegations in the answer that contradict the plaintiff's allegations."). "Also, materials properly attached to the pleadings as exhibits may be considered." Wahl v. Am. Sec. Ins. Co., 2010 WL 1881126, at 3, 2010 U.S. Dist. LEXIS 54637, at 7 (N.D.Cal. May 10, 2010) (citing Amfac Mtg. Corp. v. Arizona Mall of Tempe, Inc., 583 F.2d 426, 429 (9th Cir. 1978)). "Mere conclusory statements in a complaint and 'formulaic recitation[s] of

the elements of a cause of action' are not sufficient." Chavez v. United States, 683 F.3d 1102, 1108 (9th Cir.2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

## III. ANALYSIS

### A. Count I: Improper Notice

To institute a rehabilitation plan, a pension fund must follow the procedures and meet the notice requirements prescribed by the PPA. See e.g., 29 U.S.C. § 1085(b)(3)(D). Plaintiffs here allege that although they were given notice in the April 27, 2012 Notice of Critical Status that benefits *might* be reduced, they were not given notice of *actual* benefit reductions before the reductions went into effect. FAC ¶ 60. Plaintiffs allege that they first received notice regarding the April 30, 2012 amendment in the Rehabilitation Plan notice sent on November 14, 2012, six-and-one-half months after the effective date. FAC ¶¶ 43, 44, 46.

A pension fund must follow five basic steps under the PPA to qualify for the anti-cutback exception. First, every year the plan's actuary must assess and certify the status of the fund. 29 U.S.C. § 1085(b)(3)(A) ("No later than the 90th day of each plan year of a multiemployer plan, the plan actuary shall certify [the fund's status] to the Secretary of the Treasure and to the plan sponsor."). Second, if the actuary finds the plan is in a "critical status," the plan sponsor must send out a notice to the plan participants detailing the fund's status and possible benefit reductions within 30 days of the actuary's certification. 29 U.S.C. § 1085(b)(3)(D) ("In any case in which it is certified . . . that a multiemployer plan is or will be in endangered or critical status . . . the plan sponsor shall, not later than 30 days after the date of certification, provide notification of the endangered or critical status to the partici-

pants."). Third, a rehabilitation plan must be adopted no more than 240 days following the actuary's certification of critical status. 29 U.S.C. § 1085(e)(1)(A) ("In any case in which a multiemployer plan is in critical status for a plan year, the sponsor . . . shall adopt a rehabilitation plan no later than 240 days following the required date for the actuarial certification of critical status."). Fourth, within 30 days of adopting a rehabilitation plan, the plan sponsor must notify the bargaining parties. 29 U.S.C. § 1085(e)(1)(B) ("Within 30 days after the adoption of the rehabilitation plan [the plan sponsor] shall provide to the bargaining parties 1 or more schedules showing revised benefit structures.").

Fifth, and most relevant here, participants must receive notice of any benefit reductions at least 30 days before the effective date of those reductions, or the reductions are not effective. 29 U.S.C. § 1085(e)(8)(C)(i) ("No reduction may be made to adjustable benefits under subparagraph (A) unless notice of such reduction has been given at least 30 days before the general effective date of such reduction."). That notice must provide "sufficient information to enable participants and beneficiaries to understand the effect of any reduction on their benefits, including an estimate (or an annual or monthly basis) of any affected adjustable benefit that a participant or beneficiary would otherwise have been eligible for as of the general effective date." 29 U.S.C. § 1085(e)(8)(C)(ii).

■ It is the final step that Plaintiffs allege Defendants failed to follow. Plaintiffs' argument is straightforward: The Rehabilitation Plan was adopted on November 7, 2012, and set the effective date for eliminating the ability to age into the Golden 80 and Golden 90 plans as April 30, 2012. FAC ¶ 44. Yet notice that these benefits were being eliminated was not sent 30

days before April 30, 2012, as it should have been, but rather on November 14, 2012, approximately six months *after* the stated effective date. Id. at ¶ 46. Therefore, the amendment failed to follow the 30-day notice requirement set out by 29 U.S.C. § 1085(e)(8)(C). See Schwarz v. UFCW–Northern Cal., Emplr. Joint Pension Plan, No. C13–00977 LB, 2014 WL 186647 at *9 (N.D.Cal. Jan. 16, 2014) (approving April 2011 notice of changes going into effect in January 2012); McGuigan v. Local 295/Local 851 I.B.T. Employer Group Pension Trust Fund, No. 11–CV–2004(JG)(MDG), 2011 WL 3421318 at *6 (E.D.N.Y. Aug. 4, 2011) (approving June 2009 notice for July 2009 changes).[1]

Defendants offer two arguments in response. First, they argue that "[i]n two separate places, PPA provides that a rehabilitation plan is allowed to reduce the adjustable benefits of participants with benefit commencement dates on or after the date of the initial notice of critical status." ECF No. 84 at 8. Defendants assert that their initial notice on April 27, 2012, of the Fund's certification of being in "critical" status should be sufficient to allow for the elimination of benefits effective on April 30, 2012, because this matches with Congress's intent underlying the PPA. Id. at 9. The Court rejects this interpretation for the simple reason that it contradicts the express language of the PPA. 29 U.S.C. § 1085(e)(8)(C)(i) ("No reduction may be made to adjustable benefits under subparagraph (A) unless notice of such reduction has been given at least 30 days before the general effective date of such reduction.").

Second, Defendants assert that because they did provide notice of the changes on November 14, 2012, they ought to be entitled to implement those changes as of December 14, 2012, pursuant to 29 U.S.C. § 1085(e)(8)(C). Since Plaintiffs do not specifically allege that any of them became eligible to receive their benefits before December 14, 2012, Defendants argue, notice was still effective. ECF No. 84 at 10. This argument also is unavailing. It ignores the plain command of the PPA that any notice contain an accurate reference to the general effective date of any reduction. 29 U.S.C. § 1085(e)(8)(C)(ii) (requiring that a notice provide "sufficient information" to participants as to how their benefits would be affected "as of the general effective date").

Accordingly, the motion for judgment on Count I is denied.[2]

## B. Count II: Improper Certification of Fund

The PPA designates the plan's actuary as the sole entity in charge of certifying the status of the fund. 29 U.S.C. § 1085(b)(3). The PPA requires that the actuary's projections "be based on reasonable actuarial estimates, assumptions, and methods that, except as provided in clause (iii), offer the actuary's best estimate of anticipated experience under the plan." 29 U.S.C. § 1085(b)(3)(B)(i).

The FAC's second count states that the certification process utilized here did not meet the requirements of section 1085(b). It alleges that the assumptions the actuary used to certify the Fund as critical were

---

1. The parties do not appear to dispute that April 30, as the date that the changes went into effect, functions as the "general effective date" for the purposes of the PPA's notice requirement. See also Schwarz, 2014 WL 186647 at *9; McGuigan, 2011 WL 3421318 at *6.

2. In light of this ruling, the Court need not reach Plaintiffs' further allegations regarding the "contingency" of Defendants' notices to the plan's participants.

not reasonable. FAC ¶ 68. It also alleges that the actuary's report found that a funding deficiency would occur over a longer period than is set forth in the PPA for the determination of critical status. Id. at ¶ 69.

The Court will grant judgment to Defendants on this count for two reasons. First, Plaintiffs have failed to plausibly allege with specificity that any part of the certification process was unreasonable or that it did not meet the requirements of section 1085(b). Second, while Plaintiffs have named only the Fund and the Fund's Trustees as Defendants, the PPA assigns responsibility for the certification solely to the actuary, not to funds or their trustees.

### 1. Plaintiff's Allegations

■ Plaintiffs' sole allegations in regards to the unreasonable nature of the Fund's certification are that "the assumptions regarding the interest rate, mortality, and projected hours[ ] [were] not reasonable" and that this led to an "undervaluation" of the Fund. FAC ¶ 68. Plaintiffs do not specify why any of these assumptions were unreasonable. As a result, the allegations contain only legal conclusions and are not sufficient to plead a claim. Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir.2011) ("[T]o be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action."). In later briefing, Plaintiffs discuss and attach a report by a different actuary who disagrees with some of the assumptions made by the Pension Fund's actuary. ECF No. 73 at 10–11. However, because this information is nei-

ther contained in the complaint nor properly attached to the complaint as an exhibit, the Court does not consider it. See Wahl v. Am. Sec. Ins. Co., No. C 08–00555 RS, 2010 WL 1881126 at *3 (N.D.Cal. May 10, 2010).

Plaintiffs also argue that the time frame used to designate the Fund as critical was calculated incorrectly. Under the PPA, a plan may be designated as critical when it is projected to have an accumulated funding deficiency for any of the four succeeding plan years. 29 U.S.C. § 1085(b)(2)(C)(iii). This brings the relevant time frame to five years: the current plan year and the four following years. Plaintiffs' FAC alleges that the actuary first found a funding deficiency in 2017, which they believed exceeded the time frame articulated in the statute. FAC ¶ 69. When Defendants explained that the report actually found a deficiency in 2016, not 2017, ECF No. 73 at 16, Plaintiffs acknowledged this, but argued that the report was based on information from 2011, and so a deficiency in 2016 still did not fall within the five-year time frame. ECF No. 79 at 12.

Plaintiffs' math is incorrect. The PPA allows a plan actuary to consider the actuarial valuation for the preceding plan year in making projections for the following year. 29 U.S.C. § 1085(b)(3)(B)(i)(II). In accordance with this, the actuary's report used data from 2011 to make projections from 2012 through 2016.[3] It therefore complies with the five year time frame contained in the PPA. See ECF No. 73, Exh. 2 ("2012 Certification").[4]

---

3. Plaintiffs' reply seems almost to concede this point, stating that "the Fund's accumulated funding deficiency would have to occur no later than 2016," but also noting that "the Funding Standard Account Projection shows a negative credit balance ·at the end of the 2016 year." ECF No. 79 at 17.

4. Because the 2012 certification report is repeatedly mentioned in the complaint, the Court may properly consider it. See Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir.2007).

## 2. Liability of Defendants Under the PPA

Plaintiffs have chosen to name both the Fund and the Fund's trustees as Defendants, but have not named the Fund's actuary, The Segal Group. As noted above, however, the PPA designates the actuary as the sole party responsible for the certification process. 29 U.S.C. § 1085(b)(3). Defendants argue that judgment should be granted in their favor because they are not liable for an allegedly unreasonable certification of critical status under the PPA. ECF No. 73 at 17-18.

Plaintiffs argue that preventing them from challenging the certification of critical status "is contrary to ERISA's purpose of 'protecting participants in employee benefits plans.'" ECF No. 79 at 18. They state that "[t]he effect of such a ruling would be to insulate pensions from judicial review of defective, manipulated, or fraudulent critical status certifications being used to justify denial of retirement benefits." Id.

The Court is not persuaded by this argument. As an initial matter, even if Plaintiffs were correct that they lacked a remedy for the alleged defects in the certification process, that would not give the Court the right—or even a good public policy justification—to create such a remedy judicially. That task is properly left to Congress. Secondarily, Plaintiffs are incorrect that "defective, manipulated, or fraudulent critical status certifications" are insulated from judicial review. Such actuarial certifications can be challenged as professional malpractice under state law. See, e.g. Mertens v. Kaiser Steel Ret. Plan, 829 F.Supp. 1158, 1163 (N.D.Cal. 1992); Richards v. Union Labor Life Ins. Co., 804 F.Supp. 1101, 1103-05 (D.Minn. 1992); see also Bourns, Inc. v. KPMG Peat Marwick, 876 F.Supp. 1116, 1122 (C.D.Cal. 1994) ("A number of courts have held that ERISA does not preempt state law mal-practice claims against plan auditors or actuaries.").

Finally, as Plaintiffs themselves note, see ECF No. 79 at 18-19, they do in fact possess potential claims against Defendants under the PPA. They may allege that Defendants failed in their duty to provide information to the actuary for their certification determination, see 29 U.S.C. 1085(b)(3)(B)(iii) (providing that the certification "shall be based on information provided by the plan sponsor, which shall act reasonably and in good faith."). Moreover, Plaintiffs also contend that the Plan's fiduciaries "have an automatic fiduciary duty" under ERISA generally, "in selecting, monitoring, and overseeing the actuary, and reviewing the actuary's work before taking action upon it." ECF 79 at 21.

The problem therefore does not appear to be that the certification process is "insulated" from judicial review, but more simply that Plaintiffs have not offered allegations as to how the Fund and its trustees—rather than the actuaries—violated any kind of duty or statutory requirement in the certification process. They do not, for example, allege facts that suggest Defendants acted unreasonably or in bad faith in providing certain information to the actuaries. Nor do they allege that the Defendants failed in some way or form to oversee the actuaries' work.

Accordingly, the Court grants Defendant's motion for judgment on Count II.

## C. Count III: Breach of Fiduciary Duty for Certifying Fund's Critical Status

The allegations in Count III are substantially identical to those in Count II, except that Count III specifies that the plan's trustees violated their fiduciary duty by wrongly certifying the Pension Fund's critical status. FAC ¶ 77. As explained above, Plaintiffs fail to plausibly allege that

the certification was unreasonable or otherwise invalid. While Plaintiffs are correct that they are "not required to plead a breach of fiduciary duty with specificity," ECF No. 79 at 21, there must be more than these bare allegations to support a plausible claim. The Court will enter judgment in favor of Defendants on Count III of Plaintiffs' FAC.

### D. Count IV: Breach of Fiduciary Duty for Favoring Certain Participants

■ Plaintiffs' final count alleges that the trustee Defendants breached their fiduciary duty when they implemented the rehabilitation plan. FAC ¶¶ 84–85. Plaintiffs' argument has two parts: (1) the plan sponsors were acting in a fiduciary capacity when adopting the Rehabilitation Plan and (2) the change to the Golden 80 and Golden 90 plans was a breach of fiduciary duty because it impermissibly favored currently working employees over those no longer in covered employment. Id.

Plaintiffs and Defendants disagree about whether the Trustees were acting in the capacity of fiduciaries when amending the plan. See ECF Nos. 79 at 22–23; 84 at 13. The Court need not resolve this question, however, because the basis for Plaintiffs' claims of breach of fiduciary duty is insufficient.

Plaintiffs allege in their complaint that the amendment eliminates benefits for those participants who have already left covered employment because they were no longer able to age into the Golden 80 or Golden 90 Plans, but not for those participants who were still working or were able to return. FAC ¶ 84. Therefore, they assert, the Defendants "breached their fiduciary duties" under ERISA by "favoring one group of participants over another." FAC ¶ 85. In their briefing, Plaintiffs assert that the fiduciary duties under ERISA prevent fund trustees from favoring one group of participants over another. ECF No. 79 at 29.

It is true, of course, that ERISA requires certain duties of parties who act as the fiduciaries for an ERISA fund. See 29 U.S.C. § 1104(a)(1)(requiring fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries"); see also Wright v. Oregon Metallurgical Corp., 360 F.3d 1090 (9th Cir.2004) (holding that "ERISA imposes three general duties on pension plan fiduciaries": (1) to "discharge their duties with 'prudence'"; (2) to "diversify investments to 'minimize the risk of large losses'"; and (3) to "act 'solely in the interest of the participants' and for the 'exclusive purpose' of providing benefits to those participants." (quoting 29 U.S.C. § 1104(a)(1))).

However, referencing these overarching fiduciary duties is not sufficient for Plaintiffs to plead a claim—especially when the PPA explicitly authorizes, as a response to a fund being designated "critical," the exact kinds of changes that Defendants attempted to implement.[5] The PPA notes that "early retirement benefits" may be reduced and permits reductions for those who are not currently receiving the benefit. 29 U.S.C. § 1085(e)(8)(A)(iii)–(iv); see also Schwarz v. UFCW–Northern Cal., Emp'rs Joint Pension Plan, No. C13–00977 LB, 2014 WL 186647 at *8–9 (N.D.Cal. Jan. 16, 2014) (approving an amendment

---

**5.** The cases that Plaintiffs cite in their brief, Morse v. Stanley, 732 F.2d 1139 (2d Cir. 1984), and John Blair Commc'n, Inc. Profit Sharing Plan v. Telemundo Grp., Inc. Profit Sharing Plan, 26 F.3d 360 (2d Cir.1994), are unavailing. At best, these cases stand for the general proposition that the "trustee must deal even-handedly among the [the working and retired participants], doing his best for the entire trust looked at as a whole." Morse, 732 F.2d at 1145.

under the PPA that made certain disability retirement benefits available only for participants currently in pay status). Indeed, both the PPA and relevant case law suggest that Defendants' fiduciary duty in such a situation is to take whatever action is necessary to ensure the fund remains solvent. See, e.g., 29 U.S.C. § 1085(e) (stating that a rehabilitation plan "must be adopted for multiemployer plans in critical status" within 240 days after certification, which includes changes that "the plan sponsor determines are reasonably necessary to emerge from critical status); Liss v. Smith, 991 F.Supp. 278, 299 (S.D.N.Y. 1998) ("Failure to monitor a fund's solvency and adjust levels, if proved, constitutes a breach of fiduciary duty."); Saxton v. Cent. Pennsylvania Teamsters Pension Fund, No. CIV.A. 02–CV–986, 2003 WL 22952101, at *11 (E.D.Pa. Dec. 9, 2003) (a fiduciary's obligations "further include monitoring the plan's solvency and adjusting benefit levels if and when appropriate").

Assuming the truth of Plaintiffs' allegations, the changes made by Defendants appear to be the types of changes contemplated and authorized by the statute. As such, the Court finds in favor of Defendants on Count IV.

## CONCLUSION

For the foregoing reasons, the Motion for Judgment on the Pleadings is granted in part and denied in part. Counts II, III, and IV are dismissed. Because it may be possible for Plaintiffs to allege additional facts that suggest Defendants violated some kind of duty in relation to the certification of the Fund as critical, Plaintiffs are granted leave to amend Count II. Plaintiffs may choose to denominate this claim as a breach of fiduciary duty if they so choose. If Plaintiffs choose to amend their complaint, they must do so within 14 days of this order.

IT IS SO ORDERED.